[No. H027112. Sixth Dist. Dec. 9, 2005.]

ROBERT J. DONALDSON, Plaintiff and Appellant, v.
DEPARTMENT OF REAL ESTATE, Defendant and Respondent.

COUNSEL

Stephen Wright for Plaintiff and Appellant.

Bill Lockyer, Attorney General, and Randall P. Borcherding, Deputy Attorney General, for Defendant and Respondent.

OPINION

**RUSHING, P. J.**—The question here is whether the Department of Real Estate (Department) possesses the power, under pertinent statutes and regulations, to revoke a real estate license based on the licensee's conviction of unlawful intercourse with a minor, where the evidence fails to establish that the minor participated unwillingly in the conduct underlying the conviction. The Real Estate Commissioner (Commissioner) assumed such a power here,

relying solely on a regulation that authorizes revocation where a licensee is convicted of a sex crime involving a "non-consenting participant." While conceding that the 16-year-old victim may have participated willingly in the conduct in question, the Commissioner concluded that her age rendered her categorically incapable of giving "legal consent" to that conduct. The Commissioner thus relied upon a presumption which in an earlier time was judicially inferred from the legislative creation of the offense of "statutory rape." That crime, however, was abolished 35 years ago, and the California Supreme Court has authoritatively declared the concomitant presumption of nonconsent to have been likewise abrogated. Accordingly, a minor victim of a sex offense cannot be declared a "non-consenting participant" based solely upon her age. Because this was the sole basis for the revocation order before us, we will direct that the order be set aside.

BACKGROUND

The Commissioner is the chief officer of the Department, with chief responsibility for enforcing those portions of the Business and Professions Code concerned with the regulation of the real estate profession. (Bus. & Prof. Code, § 10050.) In 1992, the Department issued a real estate salesperson's license to appellant Robert J. Donaldson (licensee), then 23. In 1999 licensee engaged in sexual relations with his wife's 16-year-old sister, who was babysitting the couple's children during a business trip by licensee's wife. This conduct was eventually reported to authorities, who investigated and, in October 2000, filed an information charging licensee with two counts of furnishing marijuana to a minor (Health & Saf. Code, § 11361, subd. (b)) and one count of unlawful intercourse with a minor more than three years his junior (Pen. Code, § 261.5, subd. (c) (Penal Code section 261.5(c)).) About a month later, licensee entered a no contest plea to unlawful intercourse with a minor, a felony, and contributing to the delinquency of a minor, a misdemeanor which the information had been orally amended to charge. The charges of furnishing marijuana to a minor were dismissed. The court suspended imposition of sentence and placed licensee on three years' probation. On September 10, 2001, the court reduced the felony conviction to a misdemeanor subject to further conditions.

Meanwhile, on March 14, 2001, the Commissioner filed a disciplinary accusation alleging that licensee had sustained convictions constituting cause to revoke or suspend his license under Business and Professions Code sections 490 and 10177, subdivision (b), in that they were "crimes involving moral turpitude, and crimes which are substantially related under section 2910, Title 10, California Code of Regulations[,] to the qualifications, functions or duties of a real estate licensee." At a hearing before an administrative law judge (ALJ), licensee admitted engaging in unlawful

intercourse but testified on cross-examination that the victim appeared to participate willingly and that he believed she had consented, although he acceded to the assertion that she lacked "the legal capacity to consent."[1] The ALJ found that the sexual conduct underlying the convictions was an isolated situational incident and that it was not contrary to the public interest for him to retain his license on a restricted basis.

The Commissioner declined to adopt the ALJ's proposed decision, instead issuing her own decision directing revocation of the license. In her initial

---

[1] Licensee testified in pertinent part as follows:

"Q. . . . You deny though and you submitted a written report denying that you raped the victim, is that correct?

"A. I wrote that I denied that?

"Q. 'I did not rape the victim.'

"A. I wrote that in and I did not rape her, in the meaning of a forceful way. I understand now that rape—obviously, the word that is used because she was a minor. But my meaning on that would have been there was no force.

"Q. Okay.

"A. As far as rape.

"Q. So in—today, do you understand that rape does not require—

"A. Force.

"Q. —physical force or violence?

"A. Absolutely.

"Q. So when you laid down in that bed with her, she did not yell out or scream no or try to get away?

"A. Never at any time.

"Q. All right. [¶] . . . [D]o you understand that because you are an older man in a position of power that she did not consent to the act that followed or do you think she consented? Do you think you had consensual—

"A. I think I had consensual—she consented, and in every sort of the way.

"Q. And she was 15 at the time?

"A. Sixteen years old.

"Q. I believe the police report indicates her as 16 at the time she's being interviewed?

"A. She was 17 at the time of the interview.

"Q. Seventeen. Excuse me. [¶] Well, do you understand that someone under the age of 18 is not—does not have the legal capacity to consent?

"A. Yes, I do."

decision she found that the minor victim was a nonconsenting participant, based upon statements in investigative reports to the effect that the victim reported having been "paralyzed" at the time of the intercourse.[2] Revocation was justified, the Commissioner wrote, because while the evidence showed "some progress in rehabilitation" and a well-developed support network, it did "not support a finding that he takes full responsibility for his conduct, or that his rehabilitation efforts are sufficient to eliminate any risk to the public."

Licensee filed a petition for a writ of administrative mandamus asking the superior court to set aside the Commissioner's order. The court granted the petition on the ground that the weight of the evidence did not support the Commissioner's finding that the intercourse was nonconsensual.[3] The court remanded the matter to the Commissioner for reconsideration.

On remand the Commissioner issued a new decision again revoking the license. She omitted any finding that the victim had not consented in fact, but concluded that discipline was nonetheless proper, apparently on the ground that, in criminal law, consent is not a defense to the crime of sexual intercourse with a minor and was not a defense to the predecessor offense of statutory rape. Thus the Commissioner wrote, "Regardless of whether the victim's involvement in the unlawful sexual conduct may have been 'consensual,' the victim was a protected minor . . . . [Licensee] knew her age and had no reasonable basis to believe she was capable of legal consent." The Commissioner also cited licensee's testimony that, as she paraphrased it, "he understands that she was not old enough to legally consent." The Commissioner concluded that licensee's convictions "were for crimes involving moral turpitude that are substantially related to the qualifications, functions, or

---

[2] The Commissioner wrote, "Circumstantial evidence, supplemented by the police report in evidence, indicates that the minor felt she was being 'forced' and 'paralyzed' when she realized what was happening. [Licensee] now realizes that she was not old enough to legally consent. He also understands that he betrayed a position of trust, and there was no excuse for what he did. But he does not appear to recognize that the minor did not in fact consent or actively participate in the act." She further wrote that licensee "still believe[d] the sexual incident with the minor was consensual," "still denied that he raped the victim," and did "not appear to appreciate that his role as a trusted adult and his physical size could have been powerful, intimidating factors that caused the minor to freeze and submit."

[3] At the hearing the court repeatedly asked counsel for the Department "what direct or circumstantial evidence outside of the police report supports the [alleged] fact that the victim was forced to submit to this act of intercourse?" Counsel was unable to direct the court to any such evidence. In its statement of decision, the court wrote that the finding of nonconsent rested on unidentified circumstantial evidence and hearsay statements in police reports; the latter were "admissible to supplement or explain other evidence at the administrative hearing," but were "not sufficient by themselves to support a finding that the victim did not consent or actively participate in the sexual act." This reasoning is not challenged before us.

duties of a real estate licensee." She reiterated her original ruling that licensee's progress in rehabilitation was not "sufficient to eliminate any risk to the public at this time."

Licensee filed an amended petition for administrative mandamus in the superior court. This time the trial court denied the petition, approving the Commissioner's conclusion that, as the court put it, "the conviction of unlawful sexual intercourse with a minor established lack of legal consent, making factual consent irrelevant," because "[t]he minor victim could not legally consent to the crime of unlawful sexual intercourse." The court entered judgment denying a writ, and licensee brought this timely appeal.

## I.  Standard of Review

Licensee's principal argument on appeal is that the victim of his violation of Penal Code section 261.5(c) could not properly be found to be a "non-consenting participant in the conduct" underlying that conviction in the absence of substantial evidence that the act was accomplished against her will. In particular he attacks the Commissioner's apparent conclusion that the victim could not "legally consent" to participate in that conduct. Because that conclusion depends on no fact other than the victim's age, which is undisputed, its validity raises only a question of law subject to our independent review. (*Stermer v. Board of Dental Examiners* (2002) 95 Cal.App.4th 128, 132–133 [115 Cal.Rptr.2d 294]; 9 Witkin, Cal. Procedure (4th ed. 1997) Administrative Proceedings, § 113, p. 1158.) Moreover, the pivotal issue is whether licensee's conviction is substantially related to his or her professional qualifications (Bus. & Prof. Code, § 490), which is also a question of law. (*Krain v. Medical Board* (1999) 71 Cal.App.4th 1416, 1424 [84 Cal.Rptr.2d 586]; see 9 Witkin, Cal. Procedure, *supra*, Administrative Proceedings, § 111, p. 1156 ["A person aggrieved by an agency determination has a right to independent judicial review of questions of law, such as those dealing with the interpretation and application of statutes or judicial precedents."].)

## II.  Power to Discipline

■ The Commissioner predicated her disciplinary action on Business and Professions Code sections 490 and 10177 and on section 2910(a)(5) of title 10 of the California Code of Regulations (section 2910(a)(5)). Section 10177 provides, "The commissioner may suspend or revoke the license of a real estate licensee . . . who has done any of the following . . . [:] [¶] . . . . [¶] (b)

Entered a plea of guilty or nolo contendere to, or been found guilty of, or been convicted of, a felony or a crime involving moral turpitude . . . ." Standing alone, this provision would authorize discipline for any conviction involving moral turpitude. It is "tempered," however, by section 490, which limits the discretion of licensing authorities. (*Arneson v. Fox* (1980) 28 Cal.3d 440, 445 [170 Cal.Rptr. 778, 621 P.2d 817]; see *Brandt v. Fox* (1979) 90 Cal.App.3d 737, 749 [153 Cal.Rptr. 683]; *Pieri v. Fox* (1979) 96 Cal.App.3d 802, 807 [158 Cal.Rptr. 256]; 2 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 4:47, p. 157, fn. 95, citing *Brandt v. Fox, supra*, 90 Cal.App.3d at p. 749 ["Bus. & Prof. Code, § 490 supersedes Bus. & Prof. Code, § 10177, subd. (b) and all pre-1974 decisions based on it"].) Section 490 states in pertinent part, "A board may suspend or revoke a license on the ground that the licensee has been convicted of a crime, if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the license was issued." Thus a determination that a licensee's conviction justifies discipline cannot rest on the moral reprehensibility of the underlying conduct, but requires a reasoned determination that the conduct was in fact substantially related to the licensee's fitness to engage in the profession.[4] (*Gromis v. Medical Board* (1992) 8 Cal.App.4th 589, 598 [10 Cal.Rptr.2d 452].)

Nor do licensing authorities enjoy unfettered discretion to determine on a case-by-case basis whether a given conviction is substantially related to the relevant professional qualifications. Business and Professions Code section 481 requires each licensing agency to "develop criteria to aid it . . . to

---

[4] Prior to the adoption of section 490, the Department had been held to have the power under Business and Professions Code section 10177 to impose discipline for any conviction involving "moral turpitude," whether or not the underlying conduct reflected in any articulable manner on the licensee's fitness to practice the profession. (*Jennings v. Karpe* (1974) 36 Cal.App.3d 709 [111 Cal.Rptr. 776].) Section 490 was manifestly intended to rein in that power. (See *Brandt v. Fox, supra*, 90 Cal.App.3d 737, 748–749 ["it is evident that the limitations imposed by section 480, subdivision (a)(3), were intended to control over a statute such as section 10177, subdivision (b), and that it was the aim of the Legislature to insure that licensing for a business or profession could not be barred for arbitrary reasons"]; *id.* at p. 749, fn. 4, quoting President's Com. on Law Enforcement and Administration of Justice, Task Force Rep.: Corrections (1967) p. 91 ["The report concluded that some licensing authorities 'tend to be primarily concerned with advancing the interests of their own members. Thus, when faced with the problem of whether to license persons with criminal records, they may be unduly concerned with the effect of the status of their professions. Further, to the extent they try to consider the public interest, they are likely to have an unrealistic view of the importance of their own profession or occupation and the potential harm to the public that might be done by unfit persons. They tend to give inadequate weight to the interests of the convicted person, and to those of society as a whole in having the contributions of this person and in not forcing him back into a life of crime.' "].)

determine whether a crime or act is substantially related to the qualifications, functions, or duties of the business or profession it regulates." In response to this directive the Department adopted section 2910 of title 10 of the California Code of Regulations, which, as amended in 1983 and in effect at the time of licensee's conviction, provided in pertinent part as follows: "(a) When considering whether a license should be denied, suspended, or revoked on the basis of the conviction of a crime, . . . the crime . . . shall be deemed to be substantially related to the qualifications, functions or duties of a licensee of the Department within the meaning of sections 480 and 490 of the Code if it involves: [¶] . . . . [¶] (5) Sexually related conduct causing physical harm or emotional distress to a person who is an observer or non-consenting participant in the conduct."[5] Licensee does not dispute that he sustained a conviction based on sexually related conduct, nor (at least for present purposes) that it caused harm or emotional distress to the minor victim. The question is whether the Commissioner committed an error of law in concluding that the victim was a "non-consenting participant in the conduct."[6]

III. *Presumption of Nonconsent*

The Commissioner's decision apparently rests on the rationale that a minor is incapable of consenting to sexual relations and is therefore a "non-consenting participant" in any sexual relations he or she may have. In her decision after remand, the Commissioner acknowledged licensee's testimony "that he believed the victim's participation in the sexual act was consensual," and acknowledged that his testimony was the only direct evidence on the

---

[5] The regulation was amended in 2002—after licensee had sustained his convictions—to declare that discipline would lie for a conviction involving "[s]exually related conduct affecting a person who is an observer or non-consenting participant in the conduct or convictions which require registration pursuant to the provisions of Section 290 of the Penal Code." (Cal. Code Regs., tit. 10, § 2910(a)(5), as amended eff. July 20, 2002.) Licensee contends that the regulation as amended imposes discipline only when the conviction requires registration as a sex offender, and that since his offense did not meet that test, the amended regulation precludes discipline. We need not consider this contention because we have concluded that licensee's convictions did not satisfy the criteria prescribed by the version in effect at the time of his offenses.

[6] Although the Commissioner alluded to licensee's concurrent misdemeanor conviction for contributing to the delinquency of a minor, she apparently did so only as evidence concerning the extent of licensee's rehabilitation, or the need for same. She acknowledged that "[t]here was no marijuana involved" in the incident underlying the Penal Code section 261.5(c) conviction, but she also wrote that the furnishing of marijuana suggested an "inappropriate relationship" extending beyond "one isolated incident." We need not attempt to fathom the meaning or pertinence of this statement since the Department has never suggested that the conviction for contributing to the delinquency of a minor furnished an independent basis for discipline under governing regulations.

subject.[7] Although she alluded to some circumstances that might suggest a lack of free consent on the minor's part, she made no attempt to rest the decision on a finding that the minor did not in fact willingly participate.[8]

The Commissioner also wrote that the victim was "under the age of legal consent." and that licensee "testified that he understands that she was not old enough to legally consent" to the sexual conduct underlying his conviction.[9] Apparently on this basis, she concluded that licensee's convictions "were for crimes involving moral turpitude that are substantially related to the qualifications, functions, or duties of a real estate licensee," such that "[c]ause to discipline [his] license exists under Business and Professions Code sections 490 and 10177(b)."

Although the reasoning behind this conclusion is expressed only obliquely, it appears to rest on the presumption of nonconsent that was formerly inferred in criminal law from the crime of statutory rape. Thus the Commissioner wrote, " 'Unlawful sexual intercourse with a minor' was historically referred

---

[7] The Commissioner wrote, "The record shows that even though [licensee] still believes the sexual incident with the minor was 'consensual,' the victim, as a minor, was under the age of legal consent. In his interview with the Department, [licensee] first denied that any intercourse occurred until the investigator pressed with further questions. [Licensee] denied, and there is no evidence to suggest, that he forcibly raped the victim."

[8] The Commissioner wrote that licensee "admitted at hearing that he was six feet tall and weighed about 200 pounds. [Licensee] does not appear to have considered the possibility that his role as a trusted adult and family member, and his physical size could have been powerful, intimidating factors in the situation." Obviously the question of what "possibilit[ies]" licensee "appear[ed] to have considered" had no bearing on whether he was subject to discipline; at most it was relevant to the extent to which he acknowledged the extent of the wrongs committed by him, which in turn might bear on the nature and degree of discipline provided a basis for discipline were established.

[9] The Commissioner wrote that licensee "testified at hearing that he believed the victim's participation in the sexual act was consensual. [Licensee]'s explanation was that the minor woke up, 'one thing led to another,' they kissed and had intercourse, and that he thought their sex was consensual. . . . [Licensee] testified that he understands that she was not old enough to legally consent. [Licensee] also testified that he understands that he betrayed a position of trust, and there was no excuse for what he did. Nevertheless, he offers, as an excuse or in mitigation, that the sexual conduct was 'consensual.' "

Licensee's lay opinion on the victim's capacity to "legally consent"—which we have concluded was erroneous—has little if any bearing here. Nor were his allusions to consent offered "as an excuse or in mitigation." They were instead drawn from him on cross-examination in an apparent attempt to insinuate that he was actually guilty of rape. That he mounted only a faint defense against that insinuation may be attributable to deference to what he erroneously supposed was superior legal knowledge on the part of his interrogator, as well to an understandable desire not to seem unrepentant. In fact, consent was relevant not to excuse or mitigate but to refute a necessary element of the disciplinary charges under the explicit language of the Department's own regulations.

to as 'statutory rape' and was a subsection of Penal Code section 261, the crime of rape. In 1970, Penal Code Section 261.5, 'unlawful intercourse with person under 18,' was enacted to distinguish the crime of unlawful sexual intercourse from the crime of rape as defined in Section 261, the latter generally involving forms of force, duress, or disability. Under Section 261.5 . . . [a]ffirmative evidence of 'consent' is also not a defense, except as it may relate to . . . a reasonable belief that the victim was over the age of legal consent. [Citations.] . . . . [¶] In the present case, after a thirteen-year relationship as the trusted brother-in-law of his wife's little sister from the age of about three years old, [licensee] violated the minor's trust and acted with criminal abandon of her best interests, provided her with illegal drugs, and engaged in unlawful sexual intercourse with the minor victim. *Regardless of whether the victim's involvement in the unlawful sexual conduct may have been 'consensual,'* the victim was a protected minor, and [licensee]'s lack of reasoned judgment as a mature adult is troubling.[10] [Licensee] knew her age and had *no reasonable basis to believe she was capable of legal consent.*"

The Commissioner's historical recital is substantially correct. Before 1970, sexual intercourse with a minor was defined by section 261 as a species of rape.[11] (Stats. 1913, ch. 122, § 1, p. 212.) But the essence of rape as conventionally understood was the overcoming of the victim's will by force or its equivalent. As a result, consent had always been a defense to rape. Consent was *not* a defense, however, to a rape charge predicated on the age of the victim. Because of that departure from the original and common understanding of rape, the offense of sexual intercourse with a person under a specified age, when classified as a form of rape, came to be known as "*statutory* rape." (See Merriam-Webster's Collegiate Dict. (10th ed. 1999) p. 1149.)

In 1970, the Legislature struck this form of conduct from the statutory definition of "rape," restoring that crime to its traditional outlines, at least where sexual conduct toward minors was concerned, and abolishing the crime

---

[10] We readily agree that licensee's conduct is "troubling." So did the Legislature when it criminalized such conduct. The question, of course, is not how troubling a licensee's conduct may be, but whether it has any bearing on his or her qualifications as a real estate professional under prescribed criteria. Similarly, we have no quarrel with the Department's repeated observation that the victim belonged to a "protected class." She was, in fact, protected by the criminal law, which intervened here to sanction licensee with a felony conviction. The Commissioner's function is to protect the public from unqualified practitioners of the real estate profession, not to amplify the sanctions of criminal law by further punishing its transgressors.

[11] Prior to 1979 the statute confined rape to conduct against a *female* victim. (See Stats. 1979, ch. 994, § 1, p. 3383; cf. Stats. 1913, ch. 122, § 1, p. 212.) And prior to 1913, the operative age for statutory rape was well below 18. (See Stats. 1850, ch. 99, § 47, p. 234 [10 years]; original Pen. Code, § 261, enacted 1872 [same]; Stats. 1889, ch. 191, § 1, p. 223 [14 years]; Stats. 1897, ch. 139, § 1, p. 201 [16 years]; Stats. 1913, ch. 122, § 1, p. 212 [18 years].)

of "statutory rape."[12] The Legislature did not, of course, decriminalize the conduct constituting that offense. Instead it enacted Penal Code section 261.5, creating the new and distinct offense of sexual intercourse with a minor. The change was not merely a matter of terminology; it also reflected a legislative judgment that the two crimes import different degrees of culpability and that the offense of sexual intercourse with a minor should be punished less harshly than rape.[13]

That consent was not a defense to statutory rape and is not a defense to intercourse with a minor in violation of Penal Code section 261.5 has no obvious bearing on the Commissioner's power to discipline licensees. If the absence of consent were an element of the offense, then licensee's plea of no contest would admit that element, bringing his conviction squarely within section 2910(a)(5). But the mere unavailability of consent as a defense to the criminal charge proves nothing about whether consent was present. On the contrary, because consent *could not have been litigated* in the criminal case, the judgment in that case is silent, and cannot be made to speak, on that question. (See *People v. Hillhouse* (2003) 109 Cal.App.4th 1612, 1619 [1 Cal.Rptr.3d 261] ["[A]lthough common parlance (even that indulged in by courts) tends to suggest that minors cannot consent to sexual contact, none of the statutory provisions which specifically govern that contact says any such thing. To the contrary, the concept of consent, whether

---

[12] Properly used, "statutory rape" refers to " '[c]arnal knowledge of a child' " in a jurisdiction where such conduct is " 'declared to be rape by statute.' " (Black's Law Dict. (8th ed. 2004) p. 1288, quoting Perkins & Boyce, Criminal Law (3d ed. 1982) p. 198.) The first California decision to use the term appears to be *People v. Soto* (1909) 11 Cal.App. 431, 436 [105 P. 420]. The earliest occurrence we have found anywhere is in *State v. Pickett* (1876) 11 Nev. 255, 257 [21 Am.Rep. 754], where the court referred to "the statutory rape" and wrote, "[i]t is obvious that here are two crimes differing essentially in their nature, though called by the same name. To one force and resistance are essential ingredients, while to the other they are not essential; they may be present or absent without affecting the criminality of the fact of carnal knowledge." The court observed that in England the "statutory crime" was "not . . . denominated 'rape,' " as a result of which English judges had "escaped the confusion of ideas which in this country has no doubt arisen from the fact that two essentially different crimes have been called by the same name." (*Id.* at p. 258.) In the absence of some indication to the contrary it seems natural to infer that the Legislature took these and other similar criticisms to heart in the 1970 recodification of this offense as something other than rape. (See *People v. Hernandez* (1964) 61 Cal.2d 529, 531, 536 [39 Cal.Rptr. 361, 393 P.2d 673].) And while some California courts have continued to use the term "statutory rape," presumably because it is less awkward than "unlawful sexual intercourse with a minor," such continued use is at best confusing. If a shorter term is wanted, perhaps some new coinage unencumbered by misleading connotations is in order, e.g., "criminal intercourse."

[13] Rape is a felony punishable by imprisonment for three, six, or eight years. (Pen. Code, § 264, subd. (a).) Licensee's offense was a "wobbler," i.e., it could be prosecuted as either a felony or a misdemeanor. (Pen. Code, §§ 261.5(c), 17, subd. (a).) Prosecuted as a felony, it exposed him to a maximum prison term of three years (Pen. Code, §§ 261.5(c), 18), plus a civil fine of up to $10,000 (Pen. Code, § 261.5, subd. (e)(1)(C)). (Cf. Pen. Code, § 269 [penalty of 15 years to life for specified sexual offenses against child under 14].)

legal or actual, is actually *irrelevant* to the determination of whether those statutes have been violated"].)

In contrast, consent was highly relevant to the disciplinary charges against licensee because, under the plain terms of section 2910(a)(5), the *absence* of consent was a necessary element of those charges. The question before the Commissioner was not whether consent provided licensee with a defense to the criminal charges—it plainly did not—but whether it furnished a defense to the *disciplinary* charge—which it clearly did unless shown to be absent. In concluding that it was absent, the Commissioner appeared to adopt the proposition that minors *cannot* consent to sexual relations, such that any minor is, *as a matter of law*, a "non-consenting participant" in any sexual relations involving her.

This seems to be the Department's central argument on appeal, where it asserts that "a minor is a non-consenting participant in a sex crime because the minor is below 'the age of consent' and is deemed by the law to be a victim." The sole authority cited for this point is *People v. Hernandez, supra,* 61 Cal.2d 529, a case applying—and criticizing—pre-1970 law. The Department cites the case for its statement that "the law makes a conclusive presumption" that a minor has not consented to sexual relations. (*Id.* at p. 531.) The court also observed, however, that this presumption envisions a victim "too innocent and naïve to understand the implications and nature of the act." (*Ibid.*) The presumption could thus result in a rape conviction "even in circumstances where a girl's actual comprehension [of the consequences of the act] contradicts the law's presumption" of naïveté and the male is "himself young and naive and responding to advances which may have been made to him." (*Ibid.*; see *ibid.*, fn. 1 [citing Missouri case to illustrate "inequitable consequences" of rule]; *id.* at p. 536, fn. 4, quoting Comment, *Forcible and Statutory Rape: An Exploration of the Operation and Objectives of the Consent Standard* (1952) 62 Yale L.J. 55, 82 [" 'The crime of statutory rape is unsupportable in its present form' "].)

Possibly in reaction to such criticisms, the Legislature abolished the crime of statutory rape and, with it, the presumption of juvenile nonconsent. The latter effect was not explicit, but neither was the presumption itself. Instead it appears to have been developed by courts as a gloss on, or rationalization for, the crime of statutory rape. The crime was apparently created in 1850 in the "Act concerning Crimes and Punishments," section 47 of which provided, "Rape is the carnal knowledge of a female, *forcibly and against her will.* Every person of the age of fourteen years and upwards, who shall have carnal knowledge of any female child under the age of ten years, *either with or without her consent, shall be adjudged to be guilty of the crime of rape,* and shall be punished by imprisonment . . . ." (Stats. 1850, ch. 99, § 47, p. 234,

italics added; see Stats. 1855, ch. 82, § 1, p. 105.) By first declaring the crime to consist of an act against the victim's will, and then declaring that the crime can be committed against a juvenile "with or without her consent," the Legislature virtually compelled the conclusion that a juvenile was *incapable* of "consenting" in a legally effective sense. She might give her personal *permission*, but the act was still declared by statute to be "against her will."

This conception was carried over when Penal Code section 261 was enacted in 1872. The statute continued to define rape to include sexual intercourse with a female "under the age of ten years," but it no longer made explicit reference to consent and lacked an overarching definition of rape as a crime committed "forcibly and against [the victim's] will."[14] Courts nonetheless continued to extrapolate from the statute an underlying incapacity to effectively consent to sexual intercourse. (See *People v. Gordon* (1886) 70 Cal. 467, 469 [11 P. 762] [consent was "immaterial" and did not furnish defense to charge of assault with intent to commit rape against juvenile victim, who was "incapable of consenting to an act of carnal intercourse"]; *People v. Verdegreen* (1895) 106 Cal. 211, 214 [39 P. 607] ["It is the declared policy of our law, as expressed in the statute, that any female under the age there fixed shall be incapable of consenting to the act of sexual intercourse; and that one committing the act with a girl within that age shall be guilty of rape, notwithstanding he obtain her actual consent."]; *id.* at p. 215 ["[T]he law implies incapacity to give consent, and this implication is conclusive. . . . [T]he female is to be regarded as resisting, no matter what the actual state of her mind may be at the time. The law resists for her."].)

As already noted, however, this regime was substantially demolished by the 1970 amendments to Penal Code section 261 and enactment of section 261.5. The Supreme Court acknowledged this fact in *People v. Tobias* (2001) 25 Cal.4th 327, 333–334 [106 Cal.Rptr.2d 80, 21 P.3d 758], where it wrote that in making the 1970 amendments, "the Legislature implicitly acknowledged that, *in some cases at least, a minor may be capable of giving legal consent to sexual relations*. If that were not so, then every violation of section 261.5 would also constitute rape under [Penal Code] section 261, subdivision (a)(1). [Citation.] Of course, a minor might still be found incapable of

---

[14] Penal Code section 261, as originally enacted, provided in pertinent part as follows: "Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either [*sic*] of the following circumstances: [¶] 1. Where the female is under the age of ten years. [¶] 2. Where she is incapable, through lunacy or any other unsoundness of mind, whether temporary or permanent, of giving legal consent. [¶] 3. Where she resists, but her resistance is overcome by force or violence . . . ." (Pen. Code, former § 261, as enacted Feb. 14, 1872.)

giving legal consent to sexual intercourse in a particular case, but by abrogating the rule that a girl under 18 is in all cases incapable of giving such legal consent, the Legislature undermined the reasoning of [*People v.*] *Stoll* [(1927) 84 Cal.App. 99, 101–102 [257 P. 583] (*Stoll*)], as well as the Court of Appeal cases that relied on *Stoll*." (Fn. omitted, italics added.)[15]

Here the Commissioner relied on the presumption of nonconsent without noting that its statutory foundation was abandoned 35 years ago or that the Supreme Court had confirmed its obsolescence in *Tobias*. In this court the Commissioner attempts to address this deficiency by quoting the *dissent* in *Tobias*, which stated, "The Legislature has indicated that a minor *actually* can consent to (i.e., voluntarily participate in) sexual intercourse, but it has not altered the established principle that a minor *legally* cannot consent to such an act." (*People v. Tobias, supra*, 25 Cal.4th at p. 340 (dis. opn. of George, C. J.).) Needless to say, we would not be free to follow this approach in preference to the majority's, even if we thought it more sound, which we do not. By drawing an artificial distinction between "legal" and "actual" consent, the dissent may supply a *model* for preserving the presumption of nonconsent that preceded the 1970 legislation, but it does not provide a *reason* for doing so. The "established principle" on which the dissent relied (*id.* at p. 340) cannot exist in the air, but must rest on some prescriptive rule of law, either laid down by judges acting in the common law tradition or derived from statutory or constitutional prescriptions. As we have noted, the principle here—the conclusive presumption that a minor does not and cannot consent to sexual relations—appears to have been inferred from a statutory treatment now long abandoned by the Legislature. That consent is *not* a defense to Penal Code section 261.5 means only that for reasons of policy, the Legislature has chosen to treat sexual intercourse with a minor as a criminal act *notwithstanding that the minor consented to it*. We can discern no other coherent interpretation. No rule of law, however widely acknowledged and espoused it may have once become, can remain "established" after the ground on which it rests is cut away by its creators.[16]

---

[15] In *Stoll* as in *Tobias*, the question was whether a minor victim of *incest* was an accessory to the crime whose testimony had to be corroborated in order to support a conviction. The court in *Stoll* had held that the minor could not be guilty of incest, and thus could not be an accomplice, because by extrapolation of the rationale for statutory rape, she could not consent to the offense. The majority in *Tobias* held that this rationale had been vitiated by the 1970 amendments to the rape statute but that the minor victim of incest was nonetheless incapable of committing that offense because of an implied legislative intent to exclude such persons from culpability. (*People v. Tobias, supra*, 25 Cal.4th at p. 336.)

[16] For this reason we take issue with cases that, without examining the issue, have continued to declare minors categorically "incapable of giving consent" to sexual intercourse. (E.g., *In re Kyle F.* (2003) 112 Cal.App.4th 538, 543 [5 Cal.Rptr.3d 190], citing *People v. Brown* (1973) 35 Cal.App.3d 317, 326 [110 Cal.Rptr. 854].) These cases are not compatible with the current

We conclude that general principles of criminal law cannot support the Commissioner's ruling that the victim here was a "non-consenting participant" in the sexual intercourse underlying licensee's conviction of violating Penal Code section 261.5(c).

## IV. *Age of Consent*

In defending the ruling here, the Department has also referred to the concept of an "age of legal consent." This phrase, like "statutory rape," has passed into lay usage and been incorporated into folk law. It obviously refers to some number of years below which the law denies the legal power to consent to something. Standing alone, however, it leaves open the questions, "What number of years?," and, "Consent to what?" The earliest use of the phrase we have found in California law appears in statutes concerned with the age at which a person could, without parental consent, *enter into a marriage*. Thus former Civil Code section 56, as enacted in 1872, provided that males under 18 and females under 15 were "capable of consenting to and consummating marriage." The Code went on to provide that either party could seek annulment on the ground that he or she "was under the *age of legal consent*; unless, after attaining the *age of consent*, such party for any time freely cohabited with the other as husband or wife." (Former Civ. Code, § 82, subd. (1), as enacted 1872; see *Vaughn v. Vaughn* (1944) 62 Cal.App.2d 260, 262–263 [144 P.2d 658] ["At common law the age of consent to marriage was fourteen (14) years for males and twelve (12) years for females"].) The phrase still appears in the codes in this context. (Fam. Code, §§ 2210, 2211; see *id.*, §§ 301, 302.)[17]

The only other statutory use we have found of the phrase "age of consent" concerns the *tort* of "seduction of a person under the age of legal consent" (Civ. Code, § 49, subd. (b); Code Civ. Proc., § 340, subd. (c) [statute of limitations]; cf. Civ. Code, § 43.5, subd. (c) [abolishing any cause of action for "[s]eduction of a person over the age of legal consent"]). It is at least arguable that the age with which the Legislature was concerned was that at which a person could consent *to marry*. There is, however, no known authority on the issue, and the only opinion we have found to brush the subject is the work of a single justice and alludes to the ages of consent for

state of the law as authoritatively declared in *People v. Tobias*, *supra*, 25 Cal.4th at pp. 333–334.

[17] Family Code section 302 declares that upon the filing of parental consents and an order of court, a minor "is capable of *consenting* to *and consummating* marriage." (Italics added.) This provision might be thought incompatible with a notion that minors are categorically incapable of consenting to sexual relations.

*both* marriage and statutory rape. (*Hirschy v. Coodley* (1953) 116 Cal.App.2d 102, 105 [253 P.2d 93] (conc. opn. of Shinn, P. J.), citing former Pen. Code, § 261 and former Civ. Code, § 56.)

■ Here of course the Department is using "age of consent" to suggest that the law prescribes an age below which no person can consent to *sexual relations*. Many cases have indeed employed the phrase as shorthand for the age below which, formally, sexual relations would support a charge for statutory rape. (E.g., *People v. Stewart* (1890) 85 Cal. 174, 176 [24 P. 722]; cf. *People v. Beevers* (1893) 99 Cal. 286, 287 [33 P. 844] [marriage].) In the absence of cogent argument to the contrary, we will indulge the inference that this usage springs from the same judicial extrapolation as gave rise to the presumption of nonconsent, and was likewise rendered obsolete by the abolition of the crime of statutory rape. Not surprisingly, the phrase has been recognized as anachronistic. (*People v. Hillhouse, supra,* 109 Cal.App.4th at p. 1620 [prior to 1970, "the act of sexual intercourse with a female under the age of 18 was included within the statutory definition of rape ([Pen. Code,] § 261), and was commonly referred to as 'statutory rape upon a female under the age of consent' "].) Just as there is no longer any "statutory rape" in this state, so there is no "age of consent" as concerns sexual relations, and references to such a concept can only muddy the analytical waters. If a defendant engages in sexual intercourse with a minor not his or her spouse, the crime is unlawful intercourse and consent has nothing to do with it. If the defendant is charged with rape, the victim's consent *is* a defense regardless of his or her age, subject only to the suggestion in *People v. Tobias, supra,* 25 Cal.4th at pages 333–334, that "a minor might still be found incapable of giving legal consent to sexual intercourse in a particular case." Such a finding would rest, however, not on a mere recitation of the victim's age but on an inference of such a high degree of immaturity that the minor could not meaningfully agree to engage in the conduct in question. While there are doubtless ages at which no reasonable fact finder could doubt the existence of this condition, the fact remains that there is no longer any bright-line "age of consent" in the criminal law. The better practice would be to abandon that phrase entirely as applied to criminal sexual relations with juveniles.

## V. *Commissioner's Interpretational Prerogative*

The Department contends that the Commissioner's view of this case reflects a long-standing administrative application of section 2910(a)(5) to cover all sex crimes against minors. The Department asserts that "[f]rom 1975 [it] . . . has used Regulation 2910(a)(5) as a basis to establish

substantial relationship in actions where a licensee has been convicted of a sex crime against a minor. Because a minor by definition is under the 18 year old age of consent, the Commissioner has always deemed a non-consenting participant to mean a minor victim. . . . [¶] The Commissioner has consistently applied section 2910(a)(5) to discipline licensees convicted of sexually-related crimes against minors because, since minors are protected class of victims [*sic*] under the age of 'adult consent,' they are 'non-consenting participants' within the intent, purpose and meaning of the regulation. The Commissioner's finding[] . . . that the minor victim was 'under the age of consent' is consistent with the Regulation 2910(a)(5). The phrase 'non-consenting participant' in that Regulation means either an adult who factually, or volitionally, did not consent to criminal sexual-related conduct, or a minor who was under the age of adult consent." Later the brief states, "The Commissioner's intent and purpose in promulgating Regulation 2910(a)(5) was to make rape and statutory rape (unlawful sexual intercourse) and related sex crime offenses grounds for license discipline. . . . [¶] The . . . Regulation . . . , as promulgated and applied by the Department since 1975 . . . , intended the Regulation to apply to . . . both minor and adult victims of sex crimes."[18] Still later the brief states, "the intent of Regulation 2910(a)(5), and its consistent application for nearly 30 years, is to describe an under-age minor victim whose factual, or volitional, participation in the conduct, if true, would not legitimize the licensee's conduct."

The Department asserts the existence of a consistent and long-standing practice under which section 2910(a)(5) was treated as applying to sexual offenses against minors on the supposition that the victims' age, in and of itself, made them "non-consenting participants." The first difficulty with this assertion is that there is no evidence in this record to support it. The Department's assertions are largely unaccompanied by record citations; the one citation provided directs us to the text of various versions of section 2910(a)(5) along with paraphrases or digest summaries of those versions. Nowhere in these materials do we find any reference to minor victims, or an illumination of when a victim will be found a "non-consenting participant." There is simply no basis for the Department's assertion of a long-standing

[18] Apparently implying that the omission of any reference to minors was justified by drafting necessity, the Department asserts that "[t]he words 'non-consenting participant' were used so that a range of sex crimes would be covered by the Regulation without a listing of each crime in the regulation." But there would have been no necessity to list offenses. The present regulation could easily have been drawn to create the desired effect by several means, including a statement that persons under a specified age are presumed, conclusively or otherwise, to be "non-consenting participants." This is not to say that such a regulation would have withstood challenge—a question not before us—but only that *drafting* it would present no particular difficulties.

application of the regulation to reach crimes against minors who voluntarily participate in their commission.[19]

**(4)** Further, even if such an interpretation had been explicitly adopted by the Department, it is questionable whether it could be enforced. Government Code section 11340.5, subdivision (a), provides, "No state agency shall issue, utilize, enforce, or attempt to enforce any guideline, *criterion*, bulletin, manual, instruction, order, *standard of general application*, or other rule, which is a regulation as defined in Section 11342.600,[20] unless the guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule has been adopted as a regulation and filed with the Secretary of State pursuant to this chapter." The chapter in question is commonly known as the Administrative Procedures Act, or APA. (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 568 [59 Cal.Rptr.2d 186, 927 P.2d 296] (*Tidewater*).) It requires an agency contemplating adoption of a regulation to "give the public notice of its proposed regulatory action (Gov. Code, §§ 11346.4, 11346.5); issue a complete text of the proposed regulation with a statement of the reasons for it (Gov. Code, § 11346.2, subds. (a), (b)); give interested parties an opportunity to comment on the proposed regulation (Gov. Code, § 11346.8); respond in writing to public comments (Gov. Code, §§ 11346.8, subd. (a), 11346.9); and forward a file of all materials on which the agency relied in the regulatory process to the Office of Administrative Law (Gov. Code, § 11347.3, subd. (b)), which reviews the regulation for consistency with the law, clarity, and necessity (Gov. Code, §§ 11349.1, 11349.3)." (*Ibid.*)

■ There is no suggestion here that the Department complied with any of these requirements in adopting the asserted "consistent application" of section 2910(a)(5) to treat all minors as "non-consenting participants." Nor can be there be any doubt that the practice as described amounts to a "regulation" subject to the APA. The Legislature has defined that term "very broadly to include 'every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law

[19] Indeed, the very course of this proceeding belies the Department's latter-day claim of a long-standing categorical application of section 2910(a)(5) to reach all sexual offenses against minor victims. Had such a rule or practice existed, there would have been no occasion for the Commissioner's original finding of fact, citing insubstantial evidence, that the victim did not in fact participate willingly in the conduct giving rise to the conviction. Nor did the Commissioner assert the existence of such a long-standing rule or practice in response to either the original or the amended petitions for administrative mandamus.

[20] Government Code section 11342.600 provides, " 'Regulation' means every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure."

enforced or administered by it, or to govern its procedure, except one that relates only to the internal management of the state agency.' (Gov. Code, § 11342, subd. (g).) A regulation subject to the APA thus has two principal identifying characteristics. [Citation.] First, the agency must intend its rule to apply generally, rather than in a specific case. The rule need not, however, apply universally; a rule applies generally so long as it declares how a certain class of cases will be decided. [Citation.] Second, the rule must 'implement, interpret, or make specific the law enforced or administered by [the agency], or . . . govern [the agency's] procedure.' (Gov. Code, § 11342, subd. (g).)" (*Tidewater, supra,* 14 Cal.4th at p. 571.)

Assuming it exists, the "longstanding application" of section 2910(a)(5) to view all minor victims of sex crimes as "non-consenting participants" is either applied to all such cases, or it is applied to some cases but not others. If it is universally applied, it is a regulation, rendering it "void for failure to comply with the APA." (*Tidewater, supra,* 14 Cal.4th at p. 576.) In that case it can provide no foundation for the revocation of licensee's license. (See *id.* at pp. 577–579.) If the rule is applied to some cases but not all, its application here must be without rational basis and thus arbitrary and capricious. (See *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 6–7 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)

In fact, however, there simply is no evidence of any such practice, policy, interpretation, or "consistent application." What the record suggests is that when faced with this case the Commissioner first issued a factual finding that, as the Department has implicitly conceded, lacked substantial evidentiary support. When the superior court set that order aside, the Commissioner resorted to what she supposed was a general rule of law, i.e., that all minor victims of sex offenses are categorically incapable of consent and are thus "non-consenting participants" in the conduct. As noted in the previous section, that rule was abrogated 35 years ago. If the Department wished to adopt it as a regulatory matter, it was required to comply with the APA. Having made no attempt to do so, it cannot rely on a supposed rule or presumption of nonconsent to justify revocation based on conduct which, so far as this record shows, was never disclosed to licensees as a potential ground for discipline. (See *Tidewater, supra,* 14 Cal.4th at pp. 568–569, citation omitted ["One purpose of the APA is to ensure that those persons or entities whom a regulation will affect have a voice in its creation [citation], as well as notice of the law's requirements so that they can conform their conduct accordingly"].)

## Disposition

The judgment is reversed with directions to set aside the order denying licensee's petition for administrative mandamus and to (1) make a new order granting the petition, and (2) issue a peremptory writ directing the Department to set aside its order revoking petitioner's license and to reconsider the matter in light of the views here expressed. Costs to appellant.

Premo, J., and Elia, J., concurred.