[No. B199013. Second Dist., Div. Eight. June 23, 2009.]

LANCE JAY ROBBINS, Plaintiff and Appellant, v.
JEFF DAVI, AS REAL ESTATE COMMISSIONER OF THE STATE OF
CALIFORNIA, Defendant and Respondent.

**COUNSEL**

The Law Offices of Thomas A. Nitti and Thomas A. Nitti for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, W. Dean Freeman, Felix Leatherwood and Marla K. Markman, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**BAUER, J.**[*]—

### SUMMARY

■ Section 490 of the Business and Professions Code permits the revocation of a license on the ground that the licensee has been convicted of a crime, if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the license was issued.[1] The Real Estate Commissioner issued a decision revoking Lance Jay Robbins's license as a real estate broker, based on three criminal convictions for misdemeanor violations of the fire protection and prevention provisions of the Los Angeles Municipal Code, all strict liability offenses to which Robbins had entered pleas of nolo contendere. Robbins sought a writ of mandate requiring the commissioner to set aside the decision revoking his license. The trial court denied Robbins's petition.

Robbins contends the trial court's judgment must be reversed because there is no substantial relationship, as a matter of law, between his crimes and the qualifications, functions or duties of a real estate licensee. We disagree and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Robbins was licensed as a real estate broker, and is also an attorney. On January 23, 2001, he pled nolo contendere and was convicted of three misdemeanor violations of the fire protection and prevention provisions of the Los Angeles Municipal Code—unlawful obstruction of buildings, failing to test a fire signal system, and failing to inspect fire extinguishers. Robbins was fined $100, placed on summary probation for 18 months and required to pay investigative costs incurred by the fire department.

---

[*]Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All statutory references are to the Business and Professions Code, unless otherwise specified.

In March 2003, the Department of Real Estate (Department) filed an accusation alleging Robbins's convictions constituted cause for the suspension or revocation of his license as a broker, as they were crimes involving moral turpitude which were substantially related to the qualifications, functions and duties of a real estate licensee. In a first amended accusation filed in February 2004, the Department alleged, "in aggravation," that in the period between 1986 and 1995, Robbins had been convicted of some 50 municipal building code violations, and was twice disciplined (in 1991 and 1994) by the State Bar of California with private reprovals.[2] (The record of conviction of a crime is conclusive evidence only that the conviction occurred, but the Department "may inquire into the circumstances surrounding the commission of the crime in order to fix the degree of discipline or to determine if the conviction is substantially related to the qualifications, functions, and duties of the licensee in question.") (§ 493.)

A hearing was held during four days in 2004 and 2005, and in September 2005 the administrative law judge (ALJ) issued a proposed decision revoking Robbins's license, concluding that:

—A substantial relationship existed between Robbins's 2001 convictions and the qualifications, functions or duties of a licensee. The code violations arose out of Robbins's ownership and/or management of apartments; Robbins indicated this was a very profitable business; and his convictions resulted from his failure to take care of health and safety requirements for the tenants of the apartments. This met the requirements described in the Department's regulations, which state that a substantial relationship is established by the "[d]oing of any unlawful act with the intent of conferring a financial or economic benefit upon the perpetrator or with the intent or threat of doing substantial injury to the person or property of another." (Cal. Code Regs., tit. 10, § 2910, subd. (a)(8).)

—Cause existed for suspension or revocation of Robbins's real estate license because "he was convicted of crimes involving moral turpitude involving the health and safety of the community and inhabitants of the apartments in question and which were substantially related to the qualifications, functions or duties of a licensee . . . ."

---

[2] The discipline in 1991 related to "facts and circumstances surrounding habitability violations in properties owned by" Robbins, and the discipline in 1994 was based on his conviction of 10 building code violations on April 29, 1993 (for which he was given 36 months summary probation and fined $8,100).

—Given the number of years in which Robbins was charged with building code health and safety violations, and the fact that he continued to be in a business affecting the management and operation of a large number of apartments in Los Angeles, it was too early to determine that he was sufficiently rehabilitated to retain his license.[3]

The Commissioner adopted the proposed decision and denied Robbins's subsequent motion for reconsideration.

On December 2, 2005, Robbins filed a verified petition for writ of administrative mandamus, seeking to compel the Commissioner to set aside the decision revoking his license. Robbins also applied ex parte for a stay of the administrative decision. The stay was denied by Judge David Yaffe on the ground granting a stay would not be in the public interest.[4]

After a hearing in December 2006, the trial court (Judge Dzintra Janavs) denied Robbins's petition. The court concluded that the weight of the evidence in the record supported the ALJ's findings that Robbins's convictions involved moral turpitude and were substantially related to the qualifications, functions and duties of Robbins as a real estate licensee; there was no abuse of discretion; and "the ALJ properly considered [Robbins's] extensive prior history and conduct as evidenced by a multitude of prior convictions."

Robbins's motion for reconsideration was denied, objections to the proposed judgment were overruled, and judgment was entered denying Robbins's petition. Robbins filed a timely appeal.

### DISCUSSION

Robbins contends that, in order to revoke his license, the Department had to establish that the crimes of which he was convicted were crimes of moral turpitude *and* were substantially related to the qualifications, functions or

---

[3] The ALJ observed that Robbins, by his own admission, owned, managed or controlled a substantial number of apartments in the Los Angeles metropolitan area, "bought at cheap prices with the expectation of substantial profits being derived with a minimal infusion of cash."

[4] The court (Judge David Yaffe) observed that if it granted the stay, Robbins could "continue to do what his license was revoked for, which was to not put the buildings in safe condition for human occupancy and to endanger lives in the process, and I think that's one of his duties as a licensee under the act."

duties of a real estate licensee, and that, as a matter of law, neither requirement was established. As we explain in the margin, legislative changes have clarified that the question of moral turpitude is irrelevant, and consequently the only question in this case is whether Robbins's crimes were substantially related to the qualifications, functions or duties of a real estate licensee.[5] Because we conclude they were, we affirm the judgment.

---

[5] When the accusation was brought against Robbins, and until shortly before the trial court hearing in December 2006, two statutory provisions were relevant to the revocation of a real estate license: (1) section 490, which provided that a board "may suspend or revoke a license on the ground that the licensee has been convicted of a crime, if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the license was issued," and (2) section 10177, subdivision (b), which then permitted the commissioner to suspend or revoke the license of a real estate licensee if the licensee had "[e]ntered a plea of guilty or nolo contendere to, or been found guilty of, or been convicted of, a felony or a crime involving moral turpitude . . . ." However, conviction of a crime involving moral turpitude alone is insufficient for revocation of a license; in *Arneson v. Fox* (1980) 28 Cal.3d 440 [170 Cal.Rptr. 778, 621 P.2d 817], the court observed that a statute can constitutionally bar a person from practicing a profession only for reasons related to his fitness or competence to practice that profession. (*Id.* at p. 448 [due process principles are satisfied so long as the requisite substantial relationship mandated by § 490 exists].) The Department's accusation cited both grounds, and the ALJ found cause for revocation of Robbins's license on both grounds.

In August 2006, the court in *Petropoulos v. Department of Real Estate* (2006) 142 Cal.App.4th 554 [47 Cal.Rptr.3d 812] (*Petropoulos*) held that section 490 did *not* provide independent statutory authorization for the Department to suspend or revoke a license based on the licensee's conviction of a crime, and that only section 10177, subdivision (b) granted the Department that authority. (142 Cal.App.4th at p. 567.) Consequently, under *Petropoulos*, the Department was authorized to take disciplinary action against a licensee convicted of a misdemeanor only under section 10177, which required that the misdemeanor conviction involve moral turpitude. (142 Cal.App.4th at p. 567.)

In 2008, the Legislature amended the statute to clarify that, contrary to the *Petropoulos* decision, section 490 *does* provide an independent basis for imposing discipline on a licensee. Subdivision (d) of section 490 now states: "The Legislature hereby finds and declares that the application of this section has been made unclear by the holding in [*Petropoulos*], and that the holding in that case has placed a significant number of statutes and regulations in question, resulting in potential harm to the consumers of California from licensees who have been convicted of crimes. Therefore, the Legislature finds and declares that this section establishes an independent basis for a board to impose discipline upon a licensee, and that the amendments to this section made by Senate Bill 797 of the 2007–08 Regular Session do not constitute a change to, but rather are declaratory of, existing law." Section 490 now also expressly states that "a board may exercise any authority to discipline a licensee for conviction of a crime that is independent of the authority granted under [section 490,] subdivision (a) only if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the licensee's license was issued." (§ 490, subd. (b).) And, effective January 1, 2008, section 10177, subdivision (b) was amended to eliminate the reference to moral turpitude, so that it now provides that a real estate license may be revoked if the licensee has "[e]ntered a plea of guilty or nolo contendere to, or been found guilty of, or been convicted of, a felony, or a crime substantially related to the qualifications, functions, or duties of a real estate licensee . . . ." So, while substantial portions of the parties' briefing are devoted to the issue of moral turpitude, the point is no longer relevant.

### 1. The standard of review.

When a trial court rules on a petition for writ of mandate following a license revocation, it must examine the record for errors of law, and exercise its independent judgment to determine whether the weight of the evidence supported the administrative decision. (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143 & fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242]; *Yakov v. Board of Medical Examiners* (1968) 68 Cal.2d 67, 69 [64 Cal.Rptr. 785, 435 P.2d 553].) After the trial court has exercised its independent judgment upon the weight of the evidence, an appellate court's function "is solely to decide whether credible, competent evidence supports [the trial] court's judgment." (*Yakov, supra,* 68 Cal.2d at p. 69.) The trial court's legal conclusions, however, are open to appellate review for errors of law. (*Green v. Board of Dental Examiners* (1996) 47 Cal.App.4th 786, 796 [55 Cal.Rptr.2d 140].) Whether a licensee's convictions are substantially related to his or her professional qualifications is a question of law. (*Donaldson v. Department of Real Estate* (2005) 134 Cal.App.4th 948, 954 [36 Cal.Rptr.3d 577] (*Donaldson*).)

### 2. Robbins's convictions for municipal code violations were substantially related to the qualifications of a real estate licensee.

A determination that a licensee's conviction justifies discipline "requires a reasoned determination that the conduct was in fact substantially related to the licensee's fitness to engage in the profession." (*Donaldson, supra,* 134 Cal.App.4th at p. 955, fn. omitted.) As *Donaldson* explains, licensing authorities do not have unfettered discretion to determine whether a given conviction is substantially related to the relevant professional qualifications. (*Id.* at pp. 955–956.) Licensing authorities are required to develop criteria to aid them in making that determination. (§ 481.) The Department's criteria appear in section 2910 of title 10 of the California Code of Regulations. As applicable here, those criteria state: "When considering whether a license should be denied, suspended or revoked on the basis of the conviction of a crime, . . . the crime . . . shall be deemed to be substantially related to the qualifications, functions or duties of a licensee of the Department . . . if it involves: [¶] . . . [¶] (8) Doing of any unlawful act with the intent of conferring a financial or economic benefit upon the perpetrator or with the intent or threat of doing substantial injury to the person or property of another." (Cal. Code Regs, tit. 10, § 2910, subd. (a)(8).)

Here, as the ALJ observed, the code violations of which Robbins was convicted arose out of his ownership and/or management of apartments, and Robbins himself indicated this was a very profitable business. (He placed in evidence a summary of his background in real estate development, which indicated that he had discovered many years ago that by acquiring and upgrading apartment buildings, "he could obtain extraordinary rates of return on the marginal sums spent on rehabilitation, and could purchase buildings at disproportionately high discounts in price for the problems involved." And, "[c]urrently he represents owners of over twenty properties with over 1000 apartment units and the owners continue to upgrade buildings and achieve significant operating income increases in greater Los Angeles.") As the ALJ concluded, Robbins's convictions for violations of fire protection and prevention provisions of the Los Angeles Municipal Code "resulted from his failure to take care of health and safety requirements for the tenants of the apartments." Since there was a profit motive (as well as the chance of substantial injury to apartment inhabitants), the ALJ concluded the requirements of section 2910 of title 10 of the California Code of Regulations were met. The trial court agreed.

We see no error of law in the trial court's conclusion, which is supported by the evidence just recited, considered in the context of Robbins's history of disregard for Los Angeles Municipal Code requirements. (As the trial court observed at the hearing, when Robbins's counsel suggested the record was "devoid of any evidence of Mr. Robbins' intent": "I think his own declarations indicate that intent in doing all of his real estate transactions—and justifiably so—his intent was making money. He was doing great at it. . . . I don't know how you can be more—his intent was obtaining financial and economic benefit. And obviously he was getting a lot of it out of the running of all these units.") When this profit motive—which of course is unassailable standing alone—is viewed in the context of Robbins's extensive history of convictions for building code violations, it is clear that section 2910 is fully satisfied: Robbins's convictions for fire code violations occurred in connection with a property he managed (and indeed a broker's license is required for persons who, for compensation, lease or rent real property, collect rents from real property, and so on) (§ 10131, subd. (b)), and it is reasonable to infer from his history of convictions for similar violations that his unlawful acts were done "with the intent of conferring a financial or economic benefit upon the perpetrator . . . ." (Cal. Code Regs., tit. 10, § 2910, subd. (a)(8).)

Robbins resists this conclusion, contending no substantial relationship exists as a matter of law because his convictions did not involve "honesty or

truthfulness" and did not "impair[] his performance of professional duties to his clients in an honest and faithful manner." Certainly honesty and truthfulness are required for the holder of a real estate license. (*Golde v. Fox* (1979) 98 Cal.App.3d 167, 176 [159 Cal.Rptr. 864] ["there is more to being a licensed professional than mere knowledge and ability"; "[h]onesty and integrity are deeply and daily involved in various aspects of the practice"].) But nothing in *Golde* or any other authority cited by Robbins supports the proposition that crimes must involve a failure of "honesty or truthfulness" in order to be substantially related to the fitness of a real estate licensee. Moreover, while a licensee's integrity may not be implicated by three convictions for code violations, when those convictions are placed in the context of an extensive history of similar violations, one may well question the claim that the licensee's integrity is not implicated. In any event, all that is required to find a substantial relationship between a crime and the qualifications of a licensee is the doing of an unlawful act with the intent of conferring a financial benefit on the doer of the unlawful act. Contrary to Robbins's assertions, and as we have just concluded, the evidence in the record is sufficient to show that requirement has been met.

Finally, Robbins asserts there is no evidence to support the ALJ's findings that Robbins's convictions "arose out of his ownership and/or management of apartments," or that his convictions "resulted from his failure to take care of health and safety requirements for the tenants of the apartments," and that "the only evidence on the [latter point] was submitted by Robbins that the criminal charges against him were unfounded . . . ." Nonsense. Robbins is not entitled to relitigate the issue of guilt as to the underlying criminal convictions. (*Arneson v. Fox, supra,* 28 Cal.3d at p. 448 ["[t]he Legislature reasonably might have concluded that a nolo conviction represents a sufficiently strong indicator of guilt to warrant discipline of a licensee without necessitating any administrative relitigation of the underlying charges"; a "strong majority of courts in this and other states have considered nolo convictions as conclusive evidence of guilt for the purpose of imposing administrative discipline"].)

■ In sum: Under the Department's criteria, a substantial relationship is deemed to exist between a crime and the "qualifications, functions or duties" of a licensee if the crime involves doing an unlawful act "with the intent of conferring a financial or economic benefit upon the perpetrator . . . ." Robbins's convictions for municipal code violations, viewed in the context of his extensive history of previous code violations, meet this requirement, and accordingly there was no error in the revocation of Robbins's license as a real estate broker.

## DISPOSITION

The judgment is affirmed. The Real Estate Commissioner is to recover his costs on appeal.

Rubin, Acting P. J., and Flier, J., concurred.

A petition for a rehearing was denied July 10, 2009, and appellant's petition for review by the Supreme Court was denied September 17, 2009, S175141.