Filed 1/8/14  Singh v. Department of Real Estate CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **CHANDANI SINGH,**<br><br>        **Plaintiff and Appellant,**<br><br>**v.**<br><br>**DEPARTMENT OF REAL ESTATE,**<br><br>        **Defendant and Respondent.** | **A137776**<br><br>**(Alameda County<br>Super. Ct. No. RG12614132)** |

The Department of Real Estate (the Department) sought to revoke the real estate salesperson's license it had issued to appellant Chandani Singh after Singh pleaded no contest to charges of felony child endangerment and contempt of court.  After an administrative hearing, the Department found that Singh's convictions were substantially related to the qualifications, functions, or duties of a Department licensee, as required by the Department's regulations.  It then revoked Singh's license.

Singh challenged the Department's decision by filing an action for administrative mandamus.  (See Code Civ. Proc., § 1094.5.)  She argued there was no evidence to support a finding that her convictions were substantially related within the meaning of the Department's regulations.  She also contended her contempt of court conviction was unsupported by the weight of the evidence.  In addition, she alleged the Department had erred by predicating certain findings on administrative hearsay evidence.

1

The trial court disagreed with Singh and upheld the Department's revocation of her license. Singh now appeals, and in this court she reprises the arguments she made below. We find them no more persuasive than did the trial court, and accordingly we will affirm its judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The Department originally issued a real estate salesperson's license to Singh on June 25, 2005. In June 2008, Singh's husband came under investigation for committing acts of continuous sexual abuse of a child (Pen. Code, § 288.5, subd. (a)), a felony. During the investigation of that crime, a protective order was issued prohibiting Singh's husband from having any contact with his 14-year-old victim, who was Singh's daughter and his stepdaughter.

Following Singh's husband's arrest in June 2008, Singh's daughter was placed with Alameda County Child Protective Services. Singh was later found not culpable in her husband's alleged prior acts against her daughter, and the girl was returned to Singh's custody in February 2009. Although her husband had been ordered to stay away from the victim, within one month of reacquiring custody of her daughter, and in direct violation of the protective order in effect against her husband, Singh permitted her child to visit him on several occasions.

In July 2009, while attending a party with her daughter and learning that her husband was parked nearby, Singh instructed the child to go outside to talk with him. Singh arranged with her husband to allow her daughter to leave the party and spend the night with him at her grandmother's home. Because the grandmother was away from her home for the night, Singh's husband had the opportunity to sexually assault and rape his stepdaughter. In August 2009, Singh allowed the girl to spend the night at her husband's brother's house, where her husband raped the child again.

During the police investigation into the sexual abuse charges, Singh's daughter reported that her stepfather had engaged in sexual acts with her against her will on four dates at his brother's house and two or three dates at her maternal grandmother's residence. An arrest warrant was issued for Singh's husband, and he is currently a

2

fugitive from prosecution.[1]  The police investigation also revealed that Singh traveled to Nepal with her seven-year-old daughter around the same time her husband fled the United States.  A warrant for Singh's arrest was issued on January 15, 2010, based upon allegations of felony child abuse and seven counts of disobeying a court order.  Singh was arrested when she returned from Nepal on February 1, 2010.

In May 2010, Singh was convicted in the Alameda County Superior Court after pleading no contest to charges of violating Penal Code section 273a, subdivision (a) (felony child endangerment) and Penal Code section 166, subdivision (a)(4) (disobeying a court order), a misdemeanor.  The court placed her on formal probation for five years.

On April 14, 2011, the Department filed an accusation against Singh seeking imposition of disciplinary action against all of her licenses and license rights.  The bases of the accusation were Singh's 2010 criminal convictions for felony child endangerment and disobeying a court order.  An administrative law judge (ALJ) conducted a hearing on the accusation on September 9, 2011.

At that administrative hearing, Singh testified that she was aware of the criminal charges against her husband, as well as the existence of the protective order prohibiting him from having any contact with her daughter.  Despite her acknowledgement that the court had ordered her to make sure her husband and her daughter did not have contact, Singh testified she willingly allowed her daughter to be alone with her husband overnight on multiple occasions.[2]

After the hearing, the ALJ issued a proposed decision.  He found good cause existed for disciplinary action against Singh's real estate salesperson's license.  He also

---

[1] The police learned that Singh's husband left on a flight to China on December 10, 2009, and the record suggests he is residing in Nepal.  He is subject to numerous pending criminal charges, including rape, sodomy with a victim under 16 years of age, attempted oral copulation on a victim under 14 years of age, penetration with a foreign object, violation of a protective order, intimidation of a witness, committing a felony while on bail, and false imprisonment.

[2] Singh repeatedly asserted that she had permitted her daughter to see her abuser only because the girl insisted on seeing him again.  She also explained that she had allowed the contact because she thought her daughter might have made up the allegations.

3

concluded Singh was not sufficiently rehabilitated, noting that the issue of rehabilitation could not be accurately assessed until Singh had completed her probation. He therefore ordered revocation of Singh's real estate salesperson's license. On December 13, 2011, the Department issued a decision adopting the ALJ's proposed decision, albeit with slight modifications.

On January 25, 2012, Singh filed a petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5) in Alameda County Superior Court. The trial court held a hearing on the petition, and on December 20, 2012, issued a written order denying it. The court rejected all of Singh's challenges to the Department's decision, including her contention that the Department had improperly relied on administrative hearsay to support its factual findings about Singh's husband's sexual abuse of her daughter. It also disagreed that there were no valid factual findings to support the Department's conclusion that Singh had "'knowingly made her daughter available for sexual contact by the child's stepfather'" and had thereby committed "'[an] unlawful act with . . . the threat of doing substantial injury to . . . another.'"

The trial court further concluded Singh's convictions were substantially related to the qualifications, functions, or duties of a real estate licensee within the meaning of California Code of Regulations, title 10, section 2910(a)(8) and (9) (section 2910(a)(8) and section 2910(a)(9)).[3] It reached the latter conclusion because it found that felony child endangerment necessarily entails an unlawful act done with the intent or threat of doing substantial injury to another, and disobeying a court order entails willful failure to comply with a court order. (§ 2910(a)(8)-(9).)

---

[3] Section 2910(a)(8) and (9), provide: "When considering whether a license should be denied, suspended or revoked on the basis of the conviction of a crime, or on the basis of an act described in Section 480(a)(2) or 480(a)(3) of the [Business and Professions] Code, the crime or act shall be deemed to be substantially related to the qualifications, functions or duties of a licensee of the Department within the meaning of Sections 480 and 490 of the Code if it involves: . . . (8) Doing of any unlawful act with the intent of conferring a financial or economic benefit upon the perpetrator or with the intent or threat of doing substantial injury to the person or property of another. [¶] (9) Contempt of court or willful failure to comply with a court order."

4

On January 23, 2013, the trial court entered judgment in favor of the Department, and Singh then filed a timely notice of appeal. On February 15, 2013, Singh filed an application in this court seeking a stay of the revocation of her license. On February 20, we issued an order deeming the application a petition for writ of supersedeas. (See Cal. Rules of Court, rule 8.112.) On March 20, 2013, we granted the petition, staying revocation of appellant's license pending resolution of this appeal.

DISCUSSION

Singh raises three issues on appeal. First, she contends the trial court erred in concluding her conviction for child endangerment met the Department's regulatory criteria for a "substantially related" conviction, because section 2910(a)(8) requires the commission of an "unlawful act . . . with the intent or threat of doing substantial injury to the person . . . of another," even though the trial court found Singh "did not subjectively intend, expect, or knowingly permit" such an injury to occur. Second, she argues the trial court erred in concluding that factual findings based on administrative hearsay were proper. Finally, Singh faults the trial court's implicit conclusion that her contempt of court conviction was supported by the weight of the evidence, because, she contends, there was no evidence the order in question applied to her.

We will first set forth our standard of review and summarize the applicable law before turning to Singh's arguments. As we explain, we find none of them persuasive.

I.     *Standard of Review*

"A trial court reviewing an administrative decision that imposes discipline on a professional licensee must exercise its independent judgment based on the evidence before it." (*Sulla v. Board of Registered Nursing* (2012) 205 Cal.App.4th 1195, 1200 (*Sulla*).) In so doing, "the trial court reviews the whole administrative record to determine whether the findings are supported by substantial evidence and whether the agency committed any errors of law." (*Donley v. Davi* (2009) 180 Cal.App.4th 447, 456 (*Donley*).) Once the trial court has exercised its independent judgment upon the weight of the evidence, our function "'is solely to decide whether credible, competent evidence

5

supports the [trial court's] judgment.' [Citation.]" (*Robbins v. Davi* (2009) 175 Cal.App.4th 118, 124 (*Robbins*).)

On appeal from the trial court's ruling, we apply the substantial evidence standard of review. (*Donley, supra,* 180 Cal.App.4th at p. 456.) That standard requires us to presume the Department's findings are supported by substantial evidence, and it is appellant's burden to show they are not. (*Ibid.*) We may not reweigh the evidence, and we must indulge all presumptions and resolve all evidentiary conflicts in favor of the Department's decision. (*Ibid.*) Moreover, its factual findings carry "'a strong presumption as to their correctness and regularity.' [Citation.]" (*Ibid.*) We may reverse the Department's decision "only if, based on the evidence before it, a reasonable person could not have reached such decision." (*Ibid.*)

Where the facts are undisputed, the Department's (and the trial court's) legal conclusions are subject to our independent review. (*Gillis v. Dental Bd. of California* (2012) 206 Cal.App.4th 311, 319; *Donaldson v. Department of Real Estate* (2005) 134 Cal.App.4th 948, 954 (*Donaldson*).) The interpretation of a statute or regulation is an issue of law we review de novo, although we will accord due deference to the Department's interpretation of its own regulations. (See *Donley, supra,* 180 Cal.App.4th at p. 465.) "'[W]e defer to an agency's interpretation of a regulation involving its area of expertise, "'unless the interpretation flies in the face of the clear language and purpose of the interpretive provision.'"" [Citation.]" (*Id.* at p. 464.)

II. *Governing Law*

Business and Professions Code section 10177 authorizes the Department's commissioner to "revoke the license of a real estate licensee . . . who has done any of the following . . . : [¶][¶] (b) Entered a plea of . . . nolo contendere to, or been found guilty of, or been convicted of, a felony, or a crime substantially related to the qualifications, functions, or duties of a real estate licensee[.]" (See also Bus. & Prof. Code, § 490, subd. (a) [granting same authority to professional licensing boards].) As its language makes clear, this section empowers the Department to impose discipline based on a conviction following a plea of nolo contendere or no contest (*Arneson v. Fox* (1980) 28

Cal.3d 440, 446 (*Arneson*)), so long as the conduct for which the licensee was convicted was substantially related to the licensee's fitness to engage in the profession. (*Donaldson, supra,* 134 Cal.App.4th at p. 955.) "Thus, there must be a logical connection or 'nexus' between a licensee's conduct and the qualifications, functions, or duties of the profession." (*Sulla, supra,* 205 Cal.App.4th at p. 1201.)

Section 481 of the Business and Professions Code requires each board to which its provisions apply to "develop criteria to aid it, when considering the . . . revocation of a license, to determine whether a crime or act is substantially related to the qualifications, functions, or duties of the business or profession it regulates." (Bus. & Prof. Code, § 481.) The Department's criteria are found in section 2910(a). (*Robbins, supra,* 175 Cal.App.4th at p. 124.) Under section 2910(a), when the Department considers whether a license should be revoked based on commission of a crime, "the crime . . . *shall be deemed to be substantially related* to the qualifications, functions or duties of a licensee of the Department within the meaning of Section[] . . . 490 of the [Business and Professions] Code if it involves" any one of eleven types of enumerated conduct. (Italics added.)

Here, the trial court upheld the Department's conclusion that Singh's convictions for felony child endangerment and disobeying a court order satisfied the criteria of section 2910(a)(8) and (9). The court agreed with the Department that Singh's conviction for felony child endangerment involved "[d]oing . . . an[] unlawful act . . . with the intent or threat of doing substantial injury to the person . . . of another." (§ 2910(a)(8).) It also sustained the Department's conclusion that Singh's conviction for disobeying a court order constituted a "willful failure to comply with a court order." (§ 2910(a)(9).)

III.     *Singh's Convictions Were "Substantially Related" to the Qualifications, Functions, or Duties of a Department Licensee.*

Singh contends the trial court's finding that her convictions were substantially related to the qualifications, functions, or duties of a real estate salesperson was based upon an erroneous interpretation of section 2910(a). Although she argues that neither her conviction for felony child endangerment nor her conviction for contempt of court met

7

the criteria of section 2910(a), Singh makes different arguments with respect to each. We address these in turn.

A.  *Singh Committed Unlawful Acts That Created a Threat of Doing Substantial Injury to Her Daughter.*

Regarding her conviction for felony child endangerment, Singh frames the issue as one of the Department's "jurisdiction" and argues it presents a pure question of law. Nevertheless, her argument rests on a factual premise, namely, that Singh "bore no culpability for the conduct that initially led to the charges against her husband, and that she was unaware of the conduct [that] ensued after she regained custody of her daughter." Consequently, she insists the record does not support the ALJ's determination that she "knowingly made her daughter available for sexual contact by the child's stepfather[.]"

1.  *The Trial Court's Decision*

The trial court found the ALJ's conclusion "inaptly phrased and potentially misleading," and therefore clarified how it interpreted the finding. The court ruled that, properly interpreted, "the conclusion not only rests on valid factual findings but is mandated by [Singh's] conviction under [Penal Code] section 273a."

The trial court explained that Penal Code section 273a applies to a person who commits any one of three acts.[4] The trial court noted the ALJ had made no factual findings to support a conclusion that Singh's guilt was premised on the first or second acts listed in the statute. Rather, the trial court read the ALJ's proposed decision as indicating that Singh violated Penal Code section 273a because she "'willfully caused or

---

[4] Penal Code section, 273a, subdivision (a) provides: "Any person who, [1] under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or [2] having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or [3] willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years." (Bracketed numerals added.)

We note that case law has construed this section as proscribing four branches of conduct, rather than three. (*In re L.K.* (2011) 199 Cal.App.4th 1438, 1444-1445.) This distinction is not relevant here, and for the purposes of this discussion, we will follow the trial court's numbering.

8

permitted [her daughter] to be placed in a situation where . . . her person or health [was] endangered' by potential sexual contact from her stepfather." The trial court then concluded, "[Singh] made her daughter available to spend time with the child's stepfather in situations, especially outside [Singh's] presence, that created a danger of sexual contact—even though [Singh] *did not subjectively intend, expect, or knowingly permit such contact to occur.*" (Italics added.)

The court went on to note Singh had been unable to identify any particular act that might constitute a violation of Penal Code section 273a and yet not constitute an "'unlawful act [done] with the intent or threat of doing substantial injury to . . . another' in the sense of section 2910, subdivision (a)(8)." Although the court doubted any such act existed, it held the Department had validly concluded Singh violated Penal Code section 273a by "making her daughter available to spend time with the child's stepfather in situations creating a danger of sexual abuse," and this act satisfied the requirements of section 2910(a)(8). The trial court explained that Singh's attempt to dispute this conclusion conflated "intent" and "threat." It ruled the Department "did properly conclude that she performed acts that, as she should have known, created a 'threat of doing substantial injury to [her daughter].'"

        2.    *Analysis*

Singh claims the trial court's finding that she did not "subjectively intend, expect, or knowingly permit" sexual contact between her husband and her daughter removes her felony child endangerment conviction from the reach of section 2910(a)(8). She reasons that without such intent, expectation, or knowledge, there was no "intent or threat of doing substantial injury to the person . . . of another." (§ 2910(a)(8).) Singh contends section 2910(a)(8) requires a threat of actually *doing* injury and not merely creating a *threat* of injury. In her view, a threat necessarily requires the expression of an intention to inflict injury. We disagree.

The court in *Donley, supra,* 180 Cal.App.4th 447 rejected an argument nearly identical to the one Singh makes here. In that case, the Department denied a license to an applicant who had been convicted of a violation of Penal Code section 273.5 (willful

9

infliction of corporal injury on his cohabitant/mother of his child) upon a plea of nolo contendere. (*Id*. at pp. 451, 453.) The applicant contended his conviction was not substantially related to the qualifications, functions, and duties of a real estate salesperson licensee because section 2910(a)(8) "is limited to situations involving the specific intent to injure, an expressed verbal threat to injure, or conduct that encompasses an intent to injure." (*Id*. at p. 464.)

Writing for the court, Justice (now Chief Justice) Cantil-Sakauye disagreed with the applicant. She reasoned that section 2910(a)(8) "specifies that a conviction involving an unlawful act done with 'the intent *or* threat of doing substantial injury' is deemed substantially related to the duties of a licensee." (*Donley, supra,* 180 Cal.App.4th at p. 465.) Because the regulation uses the disjunctive "or," it "suggests the 'threat' of doing substantial injury contemplated by the regulation is something different from, or at least includes more than, an act done with the 'intent' of doing substantial injury." (*Ibid*.) The court therefore construed the regulation as embracing more than "crimes involving a specific intent to substantially injure." (*Ibid*.) It also found it made no sense "for the 'threat' to be limited to situations where there is an expressed verbal 'threat' to substantially injure since in all such situations, the verbal expression would be evidence of the actor's 'intent' to injure." (*Ibid*.) "Therefore, it seems most likely that the term 'threat' as used in section 2910 encompasses not only an expression of intention to inflict injury, by words or action, but a situation *where the unlawful act itself poses an imminent risk of substantial injury*."[5] (*Ibid*., italics added.)

_____

[5] Singh seeks to distinguish *Donley* on its facts. She focuses on the court's recounting of a physical struggle between the applicant and his girlfriend that took place in the presence of the couple's four-year-old son. (*Donley, supra,* 180 Cal.App.4th at pp. 451-452, 464.) She contrasts this with her case, in which she claims the Department's substantial relationship determination consists of nothing more than an "abbreviated *ipse dixit*[.]"

Singh ignores the ALJ's findings that she allowed her daughter to leave a party with her husband and spend the night at the home of her grandmother, whose absence gave Singh's husband "the opportunity to sexually assault and rape the girl." The ALJ also found that "in approximately August 2009, [Singh] allowed the girl to spend a night at the offender's brother's house, where the offender again raped the girl." Singh allowed

10

That is precisely the case here. By contravening a restraining order and permitting her husband unsupervised access to her daughter—*despite* the knowledge that he had already sexually abused the girl—Singh willfully permitted her child "to be placed in a situation where . . . her person or health [was] endangered[.]" (Pen. Code, § 273a, subd. (a).) Contrary to Singh's understanding of the statute, the crime of felony child endangerment does not require a specific intent to injure; it requires only the intent to do the act that places, or permits a child to be placed, "'in a situation in which serious physical danger or health hazard to the child is reasonably foreseeable.' [Citation.]" (*People v. Vargas* (1988) 204 Cal.App.3d 1455, 1468 (George, J.); accord, Pen. Code, § 7, subd. (1) [word "'willfully,' when applied to the intent with which an act is done . . . does not require any intent to violate law, or to injure another . . . ."]; *People v. Lee* (1991) 234 Cal.App.3d 1214, 1221 [term "willful" in Pen. Code, § 273a implies only a purpose or willingness to commit the act or to make the omission referred to].) Leaving her daughter in the unsupervised care of her husband created "a situation where the unlawful act itself pose[d] an imminent risk of substantial injury." (*Donley, supra,* 180 Cal.App.4th at p. 465.) Thus, the facts adequately support the finding that Singh committed an "unlawful act . . . with the . . . threat of doing substantial injury to the person . . . of another." (§ 2910(a)(8).)

Singh's attempts to avoid this conclusion are unavailing. She claims there was no evidence she committed an unlawful act, but this argument is foreclosed by her pleas of no contest, since "the conviction[s] which [were] based thereon stand[] as *conclusive evidence of appellant's guilt of the offense charged*." (*Arneson, supra,* 28 Cal.3d at p. 449, italics added.) Singh admittedly violated a restraining order that forbade contact between her husband and her daughter.[6] (Pen. Code, § 166, subd. (a)(4).) In so doing,

_____

her husband to have unsupervised contact with her daughter a full year after he became the subject of criminal prosecution for child molestation and a year after the court had entered a restraining order prohibiting contact between the two. At the disciplinary hearing, Singh admitted it was her actions that permitted what she euphemistically called "the incident" to occur. These facts are far more than an "abbreviated *ipse dixit*[.]"

[6] We address Singh's arguments regarding this conviction in part III.B., *post*.

11

she willfully placed her child in a situation in which her health was endangered, and the harm to her child was reasonably foreseeable. (Pen. Code, § 273a, subd. (a); *People v. Vargas, supra,* 204 Cal.App.3d at p. 1468.) By pleading no contest to the charges, Singh has admitted to committing unlawful acts, and this requirement of section 2910(a)(8) is therefore satisfied.

B.    *Substantial Evidence Supports the Department's Determination That Singh Willfully Failed to Comply With a Court Order.*

Singh next contends the trial court erred in concluding that her contempt of court conviction was supported by "the weight of the evidence." She notes Penal Code section 166, subdivision (a)(4) punishes the "[w]illful disobedience of the terms as written of any . . . court order . . . , lawfully issued by a court[.]" She argues that a conviction under this section requires proof of "a clear, intentional violation of a specific, narrowly drawn order." (*People v. Moses* (1996) 43 Cal.App.4th 462, 468.) Singh claims "there is nothing in the record to indicate that the language of the order even applied to appellant." Indeed, Singh goes so far as to assert that "what little there is in the record pertaining to the order points to the inescapable conclusion that the protective order applied solely to [her] husband, and not to [her]." We cannot agree.

First, this argument is yet another attempt by Singh to relitigate the underlying charge, and this is precisely what *Arneson, supra,* 28 Cal.3d 440 forbids. As explained previously, Singh pleaded no contest to the charge of contempt of court, and the resulting conviction is conclusive evidence of her guilt. (*Id.* at p. 449.) The Legislature has authorized the Department to impose discipline based on Singh's convictions "without necessitating any administrative relitigation of the underlying charges." (*Id.* at p. 448.) To the extent the disciplinary proceedings before the Department inquire into the circumstances surrounding the offenses, that inquiry "'should not form the basis of impeaching a prior conviction.' [Citation.]" (*Id.* at p. 449.) Singh chose to plead no contest to a charge of contempt of court, and she may not attack that conviction in an administrative forum.

12

Second, quite apart from the conclusive effect of her conviction, Singh is simply wrong when she claims there is no evidence the restraining order applied to her. Indeed, the evidence that it did can be found in Singh's own testimony at the disciplinary hearing. After admitting the accuracy of her convictions, Singh was asked to explain "the circumstances and the incident that led" to them. She responded, "I should have followed the court order and followed the instructions." Singh further testified that she "knew the consequences" of allowing her daughter to see her husband, and she reported telling her daughter, "'You are not supposed to see him anymore. *I could get in trouble.*'" (Italics added.) Singh was clearly under the impression that the order applied to her.

Asked by her counsel whether the court had entered "an order *ordering you* to make sure that your husband and your daughter do not have any contact[,]" Singh responded affirmatively, stating, "Yes. It was all in – the restraining order was in place between them, yes." (Italics added.) On cross-examination, counsel for the Department asked Singh, "is violating a restraining order from a court doing the right thing?" Singh responded, "Of course not, absolutely not. That was wrong." Thus, Singh's testimony clearly indicates she believed the restraining order applied to her. In his closing argument to the ALJ, Singh's counsel at the disciplinary hearing admitted as much, stating, "[Singh] went through and she said exactly what she did wrong. She failed to protect her daughter. *She failed a court order. And for that, she was convicted.*" (Italics added.)

In sum, Singh's conviction for violating Penal Code section 166, subdivision (a)(4) conclusively establishes she was guilty of willful disobedience of a court order. (*Arneson, supra,* 28 Cal.3d at p. 449.) Her testimony at the hearing only confirms that, contrary to her claims on appeal, she understood the restraining order applied to her. The record therefore amply supports the Department's finding that Singh was guilty of a "willful failure to comply with a court order." (§ 2910(a)(9).)

13

IV.    *The Department Could Properly Rely on Administrative Hearsay to Supplement or Explain the Certified Copies of Singh's Convictions.*

Singh argues the trial court erred in upholding findings she contends rest solely on administrative hearsay.  Her argument concerns facts contained in a report to the Fremont Police Department, the basis of which was the victim's statements to a child interview specialist.  Singh contends that under the rules governing the admissibility of evidence in administrative hearings, the Department should not have been permitted to consider her daughter's statements as contained in the report, because these statements were hearsay and did not fall within any exception to the hearsay rule.  We disagree.

Under Government Code section 11513, subdivision (c), an administrative hearing is not subject to the technical rules of evidence that govern civil trials.  (*Donley, supra,* 180 Cal.App.4th at p. 461.)  At such a hearing, "[a]ny relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions."  (Gov. Code, § 11513, subd. (c).)  The statute also permits the use of hearsay evidence "for the purpose of supplementing or explaining other evidence[.]"  (Gov. Code, § 11513, subd. (d).)  But if a "timely objection" is made, hearsay evidence "shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions."  (Gov. Code, § 11513, subd. (d).)

Singh concedes in her brief that if the proffered evidence supplements or explains other evidence, then it is admissible.  She further acknowledges that the trial court's ruling addressed the issue of admissibility when it found that the administrative hearsay at issue merely supplemented or explained the certified copies of her convictions.  She does not appear to contest this ruling.  Instead, she focuses solely on whether the police report could be used "as the predicate for factual findings."  The challenged findings concern her "husband's misdeeds in 2009."

We discern no error in the Department's reliance on the statements in the police report.  The facts in the police report were not used to prove that Singh's husband had

14

sexually abused her daughter. Nor were they used to prove that Singh was guilty of felony child endangerment and contempt of court. The certified copies of Singh's convictions were indisputable proof of Singh's guilt. (See *Arneson, supra,* 28 Cal.3d at p. 449.) The police report was only used to supplement or explain the basis of Singh's convictions. As such, the facts in the police report were properly admitted and did not have to come within an exception to the hearsay rule. (See *Berg v. Davi* (2005) 130 Cal.App.4th 223, 230 [Department rejected application for real estate salesperson's license because applicant had previously been disbarred; ALJ could consider facts contained in opinions of State Bar Court and State Bar Court Review Department, because they explained properly admitted evidence of applicant's actual disbarment].)

In any event, we agree with the trial court that even if the admission of the facts in the police report was error, it was harmless. The facts in the report related to the details of Singh's husband's crimes. But Singh was not disciplined because her *husband* had violated the law. Her license was revoked because she was convicted of felony child endangerment and contempt of court. Thus, any error in the admission of this evidence would not amount to a "prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).)

### DISPOSITION

The judgment is affirmed. The writ of supersedeas staying the judgment and enforcement thereof shall dissolve upon the finality of this opinion as to this court.

15

(Cal. Rules of Court, rule 8.264(b)(1).)  The Department shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____

Jones, P.J.

We concur:

_____

Needham, J.

_____

Bruiniers, J.