[No. A125875. First Dist., Div. Four. May 4, 2011.]

THE GRUBB COMPANY, INC., Plaintiff and Appellant, v.
DEPARTMENT OF REAL ESTATE et al., Defendants and Respondents.

**Counsel**

Belzer, Hulchiy & Murray, William J. Murray, Gary S. Garfinkle and Maria J. Garfinkle for Plaintiff and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Paul Gifford, Assistant Attorney General, and Marguerite C. Stricklin, Deputy Attorney General, for Defendants and Respondents.

**Opinion**

**RUVOLO, P. J.—**

## I.

## INTRODUCTION

An employee of appellant The Grubb Company, Inc. (Grubb), a licensed real estate brokerage firm, represented both parties in negotiations for the sale of a residence. The sale fell through, and the sellers, against Grubb's advice, declined to return the buyers' deposit. The buyers sued Grubb, several of its employees, and the sellers. The jury found that Grubb and one of its employees had made misrepresentations and breached their fiduciary duty. The jury also found, however, that the buyers had *not* shown by clear and convincing evidence that Grubb or its employee acted with malice, fraud, or oppression.

The California Real Estate Commissioner (Commissioner) initiated administrative disciplinary proceedings against Grubb under a statute, Business and Professions Code section 10177.5,[1] authorizing discipline based upon a civil judgment against a real estate licensee for misrepresentation, fraud, or deceit in connection with a transaction for which a license is required. After a hearing, an administrative law judge recommended that no discipline be imposed, but the Commissioner rejected the recommendation and imposed discipline. The trial court denied Grubb's petition for a writ of mandate.

On this appeal, Grubb argues that, notwithstanding the terms of the authorizing statute, the Commissioner cannot constitutionally discipline a real estate licensee based on a judgment procured by proof by a preponderance of the evidence rather than on clear and convincing evidence. We agree, and therefore reverse the trial court's order denying the writ.[2]

## II.

### FACTS AND PROCEDURAL BACKGROUND

#### A.  Events Leading to Underlying Litigation

Otis McGee and Valerie Lewis (collectively Sellers), both members of the State Bar of California, owned a home in Piedmont (the house).[3] The house was built in the 1930's, and expanded on the lower level in the 1950's. The expansion work was apparently done in accordance with permits issued by the City of Piedmont (the City), but the City's records were not entirely clear on this point. In 1998, Sellers listed the house for sale, but their effort to sell it was not successful.

When the house was listed for sale in 1998, it was described in the Multiple Listing Service as having 4,200 square feet of living space. This was consistent with an appraisal done at that time, which did not include an enclosed patio on the lower level as part of the living space. In March 2002, however, an inspector from the California State Automobile Association gave Sellers a replacement cost report (the CSAA report) showing that the living area of the house measured 5,234 square feet.

---

[1] All further statutory references are to the Business and Professions Code unless otherwise noted.

[2] Given our conclusion, we need not, and do not, address Grubb's alternative arguments that (1) application of section 10177.5 to the facts in this case was an abuse of discretion and (2) the trial court did not conduct the required independent review of the administrative record.

[3] Our summary of the facts giving rise to the underlying litigation is based on the administrative law judge's findings. We recite these facts for background purposes only; as will appear from the Discussion, *post*, the details are not material to our disposition of this appeal.

In May 2002, Sellers decided to try again to sell the house. They retained Susanne Paul (Paul), an employee of Grubb, as their listing agent. Paul told Sellers that MetroScan, a private real estate database, showed that the house had only 2,800 square feet, as compared with the 4,200 square feet shown on the 1998 listing. McGee told Paul about the CSAA report. Paul then represented on a flyer that the house had a living area of approximately 5,000 square feet, and Sellers did not take issue with this representation.[4]

Kaye and Paul Tiao (collectively Buyers) became interested in buying the house, and looked at it several times. Paul explained to Buyers that the square footage shown on the MetroScan report apparently did not include the expanded lower level, and that the 5,000 square foot living area described on the listing was based on documentation provided to Paul by Sellers. Paul also gave Buyers the permit file, Sellers' disclosure statement, and other documents relating to the house.

Buyers asked Paul to represent them, knowing that in doing so, she would be a dual agent for both parties; Paul agreed. On July 10, 2002, Buyers and Sellers entered into a contract (the contract) for the sale of the house at a price of $1.16 million, and Buyers paid a $35,000 deposit into escrow. After the contract was signed, however, a conflict developed between Sellers and Buyers over pest control inspections and repairs. When the parties were unable to resolve their disputes, Buyers requested that they be released from the contract and that their deposit be returned. Sellers declined.

Two senior personnel on Grubb's staff then persuaded Sellers to allow additional inspections. Grubb also lent Sellers $43,000 with which to complete needed termite work so that the house could be put back on the market. On August 28, 2002, Buyers and Sellers agreed on an addendum to the contract. Buyers then procured an appraisal, which valued the house at the contract price, but indicated that its living area was only 2,974 square feet, because the appraiser was not convinced of the legality of the lower level expansion, and therefore did not include it. Paul told Buyers that the appraiser was in error in this regard, and made an appointment with Buyers to discuss the matter further.

Buyers did not keep the appointment, however. On September 9, 2002, Buyers—through their attorney—sent Sellers and Grubb a notice of rescission. Sellers responded with a letter from their counsel stating that the notice of rescission was untimely, and that Sellers expected Buyers to perform under

---

[4] Grubb later learned that the City's records showed the house had 4,043 square feet of interior living space, plus an enclosed patio measuring 600 square feet, for a total of 4,643 square feet.

the contract, and would not return the deposit. Some further negotiations ensued, but ultimately, Buyers declined to consummate the sale, and Sellers did not release the deposit.

## B. History and Outcome of Underlying Litigation

On October 8, 2002, Buyers filed a civil complaint (the complaint) against Sellers, together with Grubb, Paul, and other Grubb personnel (collectively the Grubb defendants).[5] The complaint alleged, among other factual bases for the suit, that Sellers and the Grubb defendants knowingly misrepresented that the house contained approximately 5,000 square feet of living space, including the lower level expansion, even though the lower level expansion had been built without permits and could not legally be used for residential purposes. The complaint pleaded causes of action against Paul and the Grubb defendants for intentional and negligent misrepresentation, as well as breach of fiduciary duty, and sought rescission of the contract as against Sellers, as well as compensatory and punitive damages. After the underlying litigation was filed, Grubb offered to repay the deposit to Buyers, but they declined the offer, and proceeded to trial.

In special verdicts, the jury in the underlying litigation found that Paul and Grubb negligently, and also either knowingly or recklessly, made a false representation of an important fact to Buyers, and that they breached their fiduciary duty to Buyers. The jury expressly declined, however, to find clear and convincing evidence that Paul and Grubb were guilty of malice, oppression, or fraud in connection with the conduct for which the jury found them liable. The jury awarded damages to Buyers against Paul and Grubb in the amount of $35,000 (the amount of the deposit that Sellers refused to return), plus interest. The jury also found against Sellers on Buyers' causes of action for intentional and negligent misrepresentation, and for concealment. As regards Sellers, the jury found by clear and convincing evidence that they acted with fraud, oppression, or malice.

After the jury rendered its verdicts on liability and compensatory damages, but before the trial on punitive damages, Sellers settled with Buyers. Under the terms of the settlement, Sellers released Buyers' $35,000 deposit, and paid Buyers an additional sum to resolve Buyers' claims against them for attorney fees and punitive damages. In exchange, Sellers obtained an assignment of Buyers' claims against the Grubb defendants. Sellers, as assignees,

---

[5] We will refer to the civil litigation initiated by Buyers' complaint as the underlying litigation.

then pressed Buyers' claims against the Grubb defendants for attorney fees, costs, and interest on the $35,000 deposit. The trial court determined that Sellers (standing in Buyers' shoes) should recover interest on the deposit (to the extent not paid by the escrow agent), and a portion of Buyers' court costs, but denied Sellers' claim for attorney fees. On May 20, 2005, the trial court entered judgment in accordance with these rulings.

### C.   Administrative Proceedings

On March 25, 2005, a deputy real estate commissioner (Deputy Commissioner) filed an accusation against Grubb and Paul based on the same facts involved in the underlying litigation. On September 27, 2006, after the judgment was entered in the underlying litigation, the Deputy Commissioner filed a second amended accusation (the accusation). The accusation alleged that Sellers and Buyers had obtained a judgment against Grubb and Paul in the underlying litigation "upon grounds of fraud, misrepresentation, or deceit with reference to a transaction for which a [real estate broker's] license is required . . . ," and that the existence of this judgment was grounds for suspension or revocation of Grubb's and Paul's licenses under section 10177.5, "in conjunction with" section 10177, subdivision (d).

The matter was assigned to an administrative law judge (ALJ), who held evidentiary hearings during October 2006 and January 2007. On February 22, 2007, the ALJ issued a 16-page proposed decision (the ALJ decision). The ALJ decision reviewed portions of the trial court record in the underlying litigation, as well as additional evidence presented at the administrative hearing. The ALJ concluded, based on that evidence, that the jury's special verdict against Paul for misrepresentation and breach of fiduciary duty could only have been based on a finding that Paul recklessly, but not knowingly, misrepresented the square footage of the house to Buyers, because the evidence did not support any of the other possible factual bases for the verdict. For the same reason, the ALJ concluded that the special verdict against Grubb for misrepresentation could only have been based on its vicarious liability for misconduct by Paul, and that the special verdict against Grubb for concealment could only have been based on Grubb's vicarious liability for concealment by another Grubb employee of either or both of two facts: that Sellers had reports regarding the property which they had not disclosed, or that Grubb had lent money to Sellers.[6] After considering Paul's

---

[6] A real estate broker may be disciplined under section 10177.5 based on its vicarious liability for the acts of its agents. (*California Real Estate Loans, Inc. v. Wallace* (1993) 18 Cal.App.4th 1575, 1581–1584 [23 Cal.Rptr.2d 462] (*CREL*).) We do not understand Grubb to argue otherwise on this appeal.

and Grubb's backgrounds and lack of any prior history of misconduct, the ALJ concluded that cause existed to suspend their licenses due to the judgment against them for misrepresentation, but due to mitigating factors, suspension of their licenses was not warranted.

On March 28, 2007, the Commissioner formally notified the parties of his decision not to adopt the ALJ decision. On November 20, 2007, after receiving briefing from Grubb and the Deputy Commissioner, and considering the reporter's transcript of the evidentiary hearing before the ALJ, the Commissioner issued a decision (the Commissioner's decision). The Commissioner's decision opined that, under *Richards v. Gordon* (1967) 254 Cal.App.2d 735 [62 Cal.Rptr. 466], the judgment itself constituted an adequate basis for disciplinary action, the facts about the acts or omissions giving rise to the judgment were therefore irrelevant, and the ALJ erred in "making an assumption about what the jury must have thought" and "second guess[ing] the jury."

The Commissioner's decision acknowledged that discipline against a professional licensee must be based on clear and convincing evidence, but concluded that under section 10177.5, the only fact that must be proven by clear and convincing evidence is the existence of a judgment based on fraud, misrepresentation, or deceit in reference to a transaction for which a license is required. Finding that this fact had been proven, but that there were substantial factors in mitigation, the Commissioner suspended Grubb's and Paul's real estate licenses and licensing rights for 30 days, but permitted each of them to pay a fine in lieu of the suspension. Grubb sought reconsideration of the Commissioner's decision, but was unsuccessful.

### D. Mandate Proceedings in the Trial Court

On January 8, 2008, Grubb filed a petition for writ of mandate in the Alameda County Superior Court, seeking review of the Commissioner's decision.[7] On March 11, 2009, the superior court heard argument on Grubb's amended and supplemental petition, and the Commissioner's opposition. On May 29, 2009, the trial court entered a 14-page order denying Grubb's petition. This timely appeal ensued.

---

[7] Paul did not join in Grubb's petition for writ of mandate and is not a party to this appeal.

## III.

## DISCUSSION

### A. Standard of Review

In reviewing a trial court's ruling on a petition for writ of mandate following an administrative decision to impose discipline on the holder of a professional license, "an appellate court's function 'is solely to decide whether credible, competent evidence supports [the trial] court's judgment.' [Citation.] The trial court's legal conclusions, however, are open to appellate review for errors of law. [Citation.]" (*Robbins v. Davi* (2009) 175 Cal.App.4th 118, 124 [95 Cal.Rptr.3d 792].)

### B. Due Process Right to Proof by Clear and Convincing Evidence

■ The statute under which Grubb was disciplined, section 10177.5, provides: "When a final judgment is obtained in a civil action against any real estate licensee upon grounds of fraud, misrepresentation, or deceit with reference to any transaction for which a license is required under this division, the commissioner may, after hearing in accordance with the provisions of this part relating to hearings, suspend or revoke the license of such real estate licensee." By its terms, section 10177.5 permits the Commissioner to discipline a real estate licensee based solely on the entry of a judgment against the licensee for fraud, misrepresentation, or deceit in a real estate transaction, without reference to the facts underlying that judgment.

■ The main legal issue presented by this appeal is whether the application of section 10177.5 to the particular circumstances of this case violates the principle that, under the California Constitution, the suspension or revocation of a professional license must be based on misconduct proven by clear and convincing evidence. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 788–789 & fn. 9 [72 Cal.Rptr.2d 624, 952 P.2d 641].) This is a pure question of law, as to which our review is de novo. (See *Griffiths v. Superior Court* (2002) 96 Cal.App.4th 757, 768 [117 Cal.Rptr.2d 445]; *Marek v. Board of Podiatric Medicine* (1993) 16 Cal.App.4th 1089, 1095–1096 [20 Cal.Rptr.2d 474].)

The uncommon facts we face in applying section 10177.5 to the present case involve the contrast between the jury's findings that (1) Grubb and Paul

negligently, and also either knowingly or recklessly, made a false representation of an important fact to Buyers, but (2) clear and convincing evidence did *not* establish that in doing so, Grubb or Paul acted with malice, oppression, or fraud for punitive damages purposes.

■ It is now clearly established that a verdict finding liability for fraud or misrepresentation—even knowing misrepresentation—need not be based on clear and convincing evidence, but only on a preponderance of the evidence. (*Liodas v. Sahadi* (1977) 19 Cal.3d 278, 286–293 [137 Cal.Rptr. 635, 562 P.2d 316] [holding that civil fraud need only be proven by preponderance of evidence, and expressly disapproving prior case law requiring proof by clear and convincing evidence]; *Whitehouse v. Six Corp.* (1995) 40 Cal.App.4th 527, 533–534 [48 Cal.Rptr.2d 600] [rule that fraud need only be proved by preponderance of the evidence is "well-established"].) Indeed, the Commissioner does not argue otherwise on this appeal.

In light of this principle of law, Grubb argues that in this case at least, the imposition of discipline based on section 10177.5 violates Grubb's due process right to proof by clear and convincing evidence. As Grubb notes, the special verdicts the jury returned in the underlying litigation make clear, on their face, that the jury found fraud by a preponderance of the evidence, while expressly declining to find by clear and convincing evidence that Grubb acted with malice, fraud, or oppression.

■ While the Commissioner's ruling was based on principles of collateral estoppel, we agree with Grubb that collateral estoppel does not apply when the factual finding in the prior proceeding was arrived at based on a lower standard of proof than the one required in the subsequent proceeding. (See *Wimsatt v. Beverly Hills Weight etc. Internat., Inc.* (1995) 32 Cal.App.4th 1511, 1523–1524 [38 Cal.Rptr.2d 612]; *In re Nathaniel P.* (1989) 211 Cal.App.3d 660, 670 [259 Cal.Rptr. 555].) Indeed, cases decided since our Supreme Court issued its opinion in *Liodas v. Sahadi, supra,* 19 Cal.3d 278 stress that professional licensees' due process rights require that proof of misconduct be by clear and convincing evidence. (See, e.g., *Hughes v. Board of Architectural Examiners, supra,* 17 Cal.4th at pp. 788–789 & fn. 9; *Ettinger v. Board of Medical Quality Assurance* (1982) 135 Cal.App.3d 853, 856 [185 Cal.Rptr. 601]; cf. *Sandarg v. Dental Bd. of California* (2010) 184 Cal.App.4th 1434, 1441 [109 Cal.Rptr.3d 826] [noting parties did not dispute that clear and convincing evidence standard applied to proof of professional misconduct by dentist, but holding that preponderance of evidence standard applied in probation revocation proceeding]; *Owen v. Sands* (2009) 176 Cal.App.4th 985, 989–994 [98 Cal.Rptr.3d 167] [indicating in dictum that

clear and convincing evidence standard would apply in building contractor disciplinary proceeding if suspension or revocation of license were at issue, but holding that preponderance standard applied where only possible penalties were fine and correction order].) This conclusion is also consistent with application of the doctrine of collateral estoppel in other contexts, such as where a civil judgment based on a finding by a preponderance of the evidence is not collateral estoppel in a subsequent criminal matter. (*Patterson v. Municipal Court* (1965) 232 Cal.App.2d 289 [42 Cal.Rptr. 769].)

In arguing that this principle does not apply here, the Commissioner relies on two cases stating that when an accusation of misconduct by a licensed real estate broker is based on section 10177.5, "the express language of the statute makes the judgment itself the operative fact upon which the disciplinary action is imposed, not the acts or omissions of the licensee which led to that judgment. Thus, if the elements of fraud have been proved in the civil action, collateral estoppel principles bar the licensee from attempting to relitigate those facts at the administrative proceeding. [Citations.]" (*CREL, supra,* 18 Cal.App.4th at p. 1582; see also *Richards v. Gordon, supra,* 254 Cal.App.2d 735.)

First, we note that the interpretation of section 10177.5 in *Richards v. Gordon, supra,* 254 Cal.App.2d 735, dates from a period before the Supreme Court clarified in *Liodas v. Sahadi, supra,* 19 Cal.3d 278, that a finding of fraud in a civil case does *not* require proof by clear and convincing evidence. This may explain why, when the Court of Appeal held in *Richards v. Gordon* that the issues in the real estate discipline proceeding before it were identical with the one involved in the prior litigation, it made no mention of the fact that a different standard of proof applied. (254 Cal.App.2d at pp. 738–739.)

In the second case on which the Commissioner relies, *CREL, supra,* 18 Cal.App.4th at page 1582, the prior fraud judgment against the realtor did rest on clear and convincing evidence, inasmuch as the jury awarded punitive damages against the defendants. Thus, in that case, the court's reliance on the fact of that judgment alone subsequently to impose discipline was consistent with both due process and the doctrine of collateral estoppel.

In any event, even if collateral estoppel could apply in the context of an earlier judgment based on a quantum of proof lower than that required in the subsequent proceeding, this does not answer the due process question Grubb raises. Thus, the real question here is not whether collateral estoppel applies, but whether the Legislature can constitutionally authorize the imposition of

professional discipline based only on clear and convincing evidence that a civil judgment has been entered against the professional for license-related misconduct, without requiring that the judgment itself have been based on clear and convincing evidence.

In the attorney licensing and disciplinary context, it is settled law that findings made by a preponderance of the evidence in civil cases cannot be given binding effect, because clear and convincing evidence is required. (See, e.g., *Maltaman v. State Bar* (1987) 43 Cal.3d 924, 947 [239 Cal.Rptr. 687, 741 P.2d 185] [while civil findings of attorney's liability for fraud bore strong presumption of validity, Supreme Court was nonetheless obligated to assess them independently under more stringent standard of " 'convincing proof . . . to a reasonable certainty' " applicable in State Bar disciplinary proceedings]; *In the Matter of Applicant A* (Review Dept. 1995) 3 Cal. State Bar Ct. Rptr. 318 [civil fraud judgment not binding on State Bar Court in admissions moral character proceeding].)

■ The Commissioner has not articulated a principled reason why a different rule should apply in real estate discipline proceedings. Instead, he argues that if we adopt Grubb's position, section 10177.5 would be nullified. We acknowledge that we are obligated to construe a statute in such a way as to uphold its constitutionality, if the interpretation is consistent with the statutory language and purpose. (See *In re Kay* (1970) 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142]; *Wilson v. State Bd. of Education* (1999) 75 Cal.App.4th 1125, 1145 [89 Cal.Rptr.2d 745].) This result can be achieved here, however, and section 10177.5's utility preserved, by interpreting section 10177.5 to provide that the Commissioner may impose discipline based on "a final judgment . . . in a civil action against any real estate licensee upon grounds of fraud, misrepresentation, or deceit with reference to any transaction for which a license is required," but only when the plaintiff in the civil action proved fraud, misrepresentation, or deceit *by clear and convincing evidence*. Thus, for example, if the jury in the present case had entered a verdict for punitive damages against Grubb, section 10177.5 would have applied—just as it did in *CREL, supra*, 18 Cal.App.4th 1575, where the trial court in the underlying civil litigation had done just that. (See *id.* at p. 1579.)

■ In sum, we conclude that the limiting construction proposed above is necessary in order to harmonize section 10177.5 with constitutional due process principles that were not well settled at the time of the statute's original enactment in 1945. Because the proceedings in this case did not comport with the constitutionally mandated construction of the requirements of section 10177.5, we agree with Grubb that the trial court erred in denying its petition for writ of mandate.

## IV.

## DISPOSITION

The judgment is reversed with directions to set aside the order denying Grubb's petition for administrative mandamus, and to (1) make a new order granting the petition, and (2) issue a peremptory writ directing the Commissioner to set aside his order suspending Grubb's license, and to reconsider the matter in light of the views here expressed. Costs on appeal are awarded to Grubb.

Reardon, J., and Sepulveda, J., concurred.