Filed 10/29/15  Lewis v. Bureau of Real Estate CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| MILO LEWIS, | C077787 |
| Plaintiff and Appellant, | (Super. Ct. No. 39201400306027CUWMSTK) |
| v. | |
| BUREAU OF REAL ESTATE, | |
| Defendant and Respondent. | |

This appeal from the denial of a petition for a writ of administrative mandate arises from an order of the real estate commissioner revoking all licenses and licensing rights of plaintiff Milo Lewis under the real estate law, including his broker license, but allowing him to apply for a restricted real estate salesperson license.  On appeal, Lewis offers numerous challenges to the actions of the administrative agency (defendant Bureau

1

of Real Estate; hereafter, the Bureau)[1] and the trial court.  Finding no merit in any of Lewis's arguments, we will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On September 14, 2010, the Bureau filed an accusation against Lewis containing various charges, including that in August, November, and December 2008, he collected advance fees before he had received a "no objection letter" from the Bureau.[2]  The accusation also alleged that, in acting as a real estate broker, Lewis had received funds in connection with mortgage loan brokerage activities that were required to be held in a trust fund account, but he had failed to deposit them into such an account.

On the same day the accusation against Lewis was filed, the Bureau issued an "Order To Desist And Refrain" directed to Cloud 10 Financial Inc. (hereafter, the cease and desist order) based on the same advance fee transactions described above.

On March 18, 2011, Lewis filed his notice of defense requesting a hearing on the accusation and stating that he did not intend to be represented by an attorney.

On August 19, 2011, the Bureau notified Lewis that the hearing on the accusation would be held on January 2, 2012.  Four days later, the Bureau notified him that the hearing would be held on January 5 and 6 instead.

In December 2011, the Bureau requested a continuance because its attorney had been hospitalized and would not return to work with adequate time to prepare for the

---

[1]     At the time, the Bureau was known as the Department of Real Estate.  For the sake of consistency, we will refer to the agency as the Bureau throughout our opinion.

[2]     Business and Professions Code section 10085 provides that the real estate commissioner "may require that any or all materials used in obtaining advance fee agreements, including but not limited to the contract forms . . . be submitted to him or her at least 10 calendar days before they are used" and that "[a]ny violation of any of the provisions of this part or of the rules, regulations, orders or requirements of the commissioner thereunder shall constitute grounds for disciplinary action against a licensee."

hearing. Lewis did not oppose the request, and the hearing was reset for July 9 and 10, 2012.

In May 2012, Lewis requested a continuance because he had been unable to prepare for the hearing due to his involvement in a family law matter. The Bureau did not oppose the request, and the hearing was reset for January 9 and 10, 2013.

In December 2012, Lewis requested his second continuance because he needed time to pay for the costs of discovery and because his family law matter was still not resolved. Again, the Bureau did not oppose the request, and the hearing was reset for July 24 and 25, 2013.

In June 2013, Lewis requested his third continuance, this time because of "unresolved discovery issues and delays in settlement discussions" and because his family law matter was still not resolved. The Bureau opposed this request, contending it was untimely and Lewis had failed to show good cause. The ALJ denied Lewis's request on the ground that no good cause had been shown, but ordered the Bureau to offer Lewis another reasonable opportunity to review and copy all discoverable documents before the hearing. According to Lewis, that review occurred on July 5.

On July 8, 2014, just over two weeks before the scheduled hearing dates, Lewis requested a continuance for the fourth time. Lewis offered numerous reasons for the requested continuance, including that he needed time to retain qualified counsel. He stated that he was "in negotiations" with an attorney and needed at least 30 days to come up with the funds to retain the attorney's services. He also argued that a continuance should be granted so he could file a motion to consolidate the accusation against him with a challenge to the cease and desist order issued against Cloud 10 Financial Inc.

The Bureau again opposed Lewis's continuance request. Regarding Lewis's retention of counsel, the Bureau asserted that Lewis had had almost two and one-half years to retain an attorney and his failure to do so in a timely manner was not good cause for a continuance. On the consolidation issue, the Bureau argued that Lewis, who was

the sole owner of Cloud 10 Financial Inc., had never requested a hearing on the cease and desist order against the corporation before now and the time for doing so had long since passed.

The administrative law judge (ALJ) again denied Lewis's continuance request, finding that Lewis had failed to show good cause for all of the reasons set forth in the Bureau's opposition.

The matter was heard before an ALJ on July 24 and 25, 2013. In a proposed decision issued in October 2013, the ALJ found that Lewis was subject to discipline on five different causes of action alleging audit violations, trust fund mishandling, using an unlicensed fictitious business name, making substantial misrepresentations, and negligence or incompetence. As relevant here, the ALJ found that in August, November, and December 2008, Lewis accepted advance fees to perform loan modification services before he had received a "no objection" letter from the Bureau for the "Hardship Services Enrollment Form" he used. The ALJ also found that Lewis failed to deposit advance fees that he received into a trust fund account.

Based on all of the violations found, the ALJ recommended that all of Lewis's licenses under the real estate law be revoked but that he be offered the opportunity to apply for a restricted real estate salesperson license.

The real estate commissioner adopted the ALJ's proposed decision in November 2013. In January 2014, Lewis filed a petition for a writ of administrative mandate against the Bureau to challenge the discipline. He filed an amended petition in February 2014, and the matter was eventually heard in July 2014.

The trial court initially filed its statement of decision denying Lewis's writ petition on August 26, 2014. Lewis filed objections to the statement of decision and a motion for reconsideration on September 9. On September 17, he filed notice of his intention to move for a new trial. On October 1, the trial court denied the motion for reconsideration and overruled the objections to the statement of decision. The formal orders on both of

4

those rulings were entered on October 16. On October 22, the Bureau filed notices of entry of both of those formal orders.

On October 30, the trial court denied Lewis's new trial motion and stated that it was going to prepare an amended statement of decision to correct one misstatement. That same day, Lewis filed a notice of appeal purporting to appeal from a judgment entered October 22, even though no judgment was entered on that date. Judgment was eventually entered in January 2015.

DISCUSSION

I

*Timeliness Of Appeal*

As a threshold matter, the Bureau contends Lewis's appeal should be dismissed as premature because when Lewis filed his notice of appeal in October 2014 judgment had not yet been entered. The Bureau admits, however, that judgment was eventually entered in January 2015.

Because judgment has been entered in the case (albeit after Lewis filed his notice of appeal), the sole authority cited by the Bureau in support of its request for dismissal of the appeal -- *Modica v. Merin* (1991) 234 Cal.App.3d 1072 -- is inapposite. In *Modica*, there was no judgment, and this court refused to continue indulging in "the fiction that a nonappealable order [granting summary judgment] incorporated a judgment of dismissal." (*Id.* at p. 1074.) Here, because there *is* a judgment, and because Lewis filed his premature notice of appeal after the trial court had announced its intended ruling, rule 8.104(d)(2) of the California Rules of Court grants us the discretion to treat Lewis's premature notice of appeal "as filed immediately after entry of judgment." As the Bureau offers us no reason why we should not exercise that discretion in favor of Lewis here, we elect to do so and thus treat the notice of appeal as having been filed immediately after the entry of judgment in January 2015. Accordingly, Lewis's appeal is deemed timely and is not subject to dismissal.

5

## II

### *Standard Of Review*

"A writ of administrative mandate is available 'for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal . . . .' (Code Civ. Proc., § 1094.5, subd. (a).)  The trial court's inquiry in such a case 'extend[s] to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.' (Code Civ. Proc., § 1094.5, subd. (b).)  Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.  (Code Civ. Proc., § 1094.5, subd. (b).)

"When it is claimed the findings are not supported by the evidence, and the trial court, as here, is authorized by law to exercise its independent judgment on the evidence, 'abuse of discretion is established if the [trial] court determines that the [administrative agency's] findings are not supported by the weight of the evidence.' (Code Civ. Proc., § 1094.5, subd. (c).)  In such a case our review on appeal is limited.  We will sustain the trial court's findings if they are supported by substantial evidence.  [Citations.]  In reviewing the evidence, we 'resolve all conflicts in favor of the party prevailing in the superior court and must give that party the benefit of every reasonable inference in support of the judgment.' [Citation.]

"[¶] . . . [¶]

"[W]e review independently [any] other claims, that the [administrative agency] exceeded its jurisdiction or failed to afford a fair trial." (*Kifle-Thompson v. State Bd. of Chiropractic Examiners* (2012) 208 Cal.App.4th 518, 523-524.)  In such instances, "[t]he trial court's determination of abuse or nonabuse of discretion by the administrative

6

agency is of no concern to the appellate court. The appellate court gives no deference to the trial court's determination. It makes its own determination, de novo." (*Cummings v. Civil Service Com.* (1995) 40 Cal.App.4th 1643, 1652.)

What the foregoing principles mean is that, with one limited exception, the actions of the trial court here are immaterial to a review because we review, de novo, the actions of the administrative agency, not the actions of the trial court. The only exception is that, to the extent Lewis challenges the sufficiency of the evidence, we do not review directly the findings of the administrative agency but instead review for substantial evidence the trial court's determination that the agency's factual findings were supported by the weight of the evidence. In this latter review, of course, we grant to the trial court the deference inherent in the substantial evidence standard of review. Otherwise, however, we review the actions of the administrative agency independently of the trial court.

With the foregoing principles in mind, we turn to Lewis's arguments.

III

*Applicable Version Of Business And Professions Code Section 10026*

Under Business and Professions Code[3] sections 10085 and 10085.5 and California Code of Regulations, title 10, section 2970, a licensee who proposes to collect an advance fee as defined in section 10026 must first obtain from the Bureau approval of the advance fee agreement the licensee proposes to use. Here, the ALJ found Lewis violated these provisions when he collected advance fees in August, November, and December 2008 before he submitted an advance fee agreement for the Bureau's review.

In finding that Lewis collected advance fees within the meaning of section 10026, the ALJ quoted the version of that statute that first took effect in January 2011 -- more

---

[3]    All further undesignated section references are to the Business and Professions Code unless otherwise noted.

7

than two years after Lewis collected the fees in question.**4**  Based on this, Lewis argued to the trial court in support of his writ petition that the Bureau's decision was "based on a clearly erroneous definition of 'advance fee' as used in the real estate law relative to the accusation period in this case."  The trial court rejected that argument, concluding that "the ALJ understood and was properly relying upon the law in effect at the time of the actions at issue here."

On appeal, Lewis contends the trial court committed reversible error by ignoring the fact that the ALJ specifically quoted the version of section 10026 that did not take effect until after Lewis collected the fees in question.  The heart of Lewis's argument, however, is that "the ALJ relied on an inapplicable version of [section] 10026."  We agree with Lewis that this argument presents a question of law that we must review independently from the trial court.  Accordingly, the trial court's decision on this point -- and in particular, the court's failure to note that the ALJ quoted a different version of section 10026 than the one in effect at the time of the alleged violations -- is immaterial.  Because we review the ALJ's actions on this point independently of the trial court, the question for us is whether Lewis has shown any prejudicial error *by the ALJ* because in finding that Lewis collected advance fees within the meaning of section 10026 the ALJ cited -- and presumably applied -- the wrong version of the statute.

We find no such error.  It is true that the two versions of the statute -- the one in effect in 2008, which governed Lewis's actions, and the one that took effect in 2011, which the ALJ cited -- are different, but they are not *materially* different with respect to what happened here.  The version of section 10026 in effect in 2008 provided in relevant

---

**4**     Section 10026 was amended twice after December 2008:  first in 2009 (Stats. 2009, ch. 630, § 3 [effective October 11, 2009]) and then again in 2010 (Stats. 2010, ch. 85, § 2 [effective January 1, 2011].)  It was in the latter amendment that the statute was first subdivided.

part as follows: "The term 'advance fee' as used in this part is a fee claimed, demanded, charged, received, collected or contracted from a principal . . . to negotiate loans on . . . real estate." (Former § 10026, as amended by Stats. 1996, ch. 469, § 1, pp. 2832-2833.) The later version of the statute, which the ALJ quoted, provided in relevant part as follows: "The term 'advance fee,' as used in this part, is a fee, regardless of the form, that is claimed, demanded, charged, received, or collected by a licensee for services requiring a license . . . before fully completing the service the licensee contracted to perform or represented would be performed."

While the language is different, as relevant here the *substance* of the two versions of the statute is the same because the amendment to section 10026 that took effect in 2011 only served to make explicit what was already implicit in the version that was in effect in 2008 -- namely, that an *advance* fee is one claimed, demanded, charged, received, or collected before the service contemplated is fully completed. Certainly this was the understanding of the term "advance fee" applied in *Nelson v. Department of Real Estate* (1984) 161 Cal.App.3d 939 -- long *before* the actions of Lewis at issue here -- which involved fees that were collected in advance "to pay for the sole purpose of soliciting lenders, making loan arrangements, and obtaining . . . loans." (*Id.* at p. 945.) As the ALJ recognized, "[t]he prohibition and restrictions placed on collecting advance fees have been in place for years to protect consumers from being victimized by real estate licensees taking upfront money in return for promised services not performed."

Furthermore, the fact that the former version of section 10026, when read properly, clearly applied to advance fees collected "to negotiate loans on . . . real estate" defeats any suggestion by Lewis that it was not unlawful to collect advance fees for *loan modification activities* until section 10026 was amended in 2010.

Thus, even though the ALJ erroneously cited the version of section 10026 that was not in effect until 2011, that error was not *prejudicial* to Lewis because there was no material change to the statute between 2008 and 2011 relevant to this case. Because

9

Lewis has not shown any *prejudicial* abuse of discretion by the ALJ on this point (see Code Civ. Proc., § 1094.5, subd. (b)), the ALJ's erroneous reference to the wrong version of the advance fee statute provides no basis for relief here.

IV

*Clear And Convincing Proof And Analytical Gaps*

"[T]he suspension or revocation of a professional license must be based on misconduct proven by clear and convincing evidence." (*The Grubb Co., Inc. v. Department of Real Estate* (2011) 194 Cal.App.4th 1494, 1502.) Lewis contends that standard "was not truly met here." His arguments on the point, however, are unpersuasive.

To the extent Lewis contends the standard of proof was not met because "[t]he ALJ ignored . . . Lewis's relevant evidence," that argument is misplaced. "After the trial court has exercised its independent judgment upon the weight of the evidence, an appellate court's function 'is solely to decide whether credible, competent evidence supports [the trial] court's judgment.' " (*Robbins v. Davi* (2009) 175 Cal.App.4th 118, 124.) Thus, on this point, it does not matter whether the ALJ ignored evidence because when we consider the sufficiency of the evidence, our review is of *the trial court's* judgment, not the ALJ's decision.

Beyond arguing that the ALJ ignored certain evidence, Lewis's arguments under this heading do not relate to the standard of proof. Instead, Lewis contends that in two instances the trial court failed to "address" or "bridge" an "analytical gap" in the ALJ's decision. Again, however, Lewis's argument are unpersuasive.

The first alleged "analytical gap" relates to the finding by the ALJ that Lewis's "Hardship Services Enrollment Form, in all appearances and effects, was a receipt for fees collected in advance for loan modification services." In Lewis's view, there is a "gap" between this finding and an earlier finding by the ALJ that "[i]n each case reviewed by Ms. Xue [the Bureau's auditor], the clients received loan modification

10

services." According to Lewis, this "gap" exists because there is "undisputed record evidence" that (1) Ms. Xue reviewed a case involving a client named Stickmond; (2)Lewis provided services to Stickmond using the very same hardship services enrollment form; (3) Stickmond did not receive loan modification services; and (4) therefore, in the case of Stickmond, the hardship services enrollment form was not, in all appearances and effects, a receipt for fees collected in advance for loan modification services.

This argument gets Lewis nowhere. Even if it is true that Lewis used the same form to provide services other than loan modification services to Stickmond, that does not prove anything with regard to whether he used that form to obtain advance fees for loan modification services from other clients in August, November, and December 2008 -- the conduct for which he was disciplined. Stated a different way, even if we were to agree with Lewis that the ALJ erroneously found, or at least suggested, that Lewis's "Hardship Services Enrollment Form" was *only* used as a receipt for fees collected in advance for loan modification services, that would provide no basis for us to grant relief to Lewis. To justify relief, Lewis had to show that there was no substantial evidence to support the trial court's determination upholding the ALJ's finding that Lewis unlawfully collected advance fees for loan modification services in August, November, and December 2008. Lewis's argument based on the services he provided to Stickmond using the same form does not constitute such a showing.

The second "gap" Lewis purports to identify in the ALJ's decision that he contends the trial court failed to address relates to findings that he "engaged in loan modification activities through Cloud 10 Financial, Inc." and that "the fees he collected . . . are properly considered and characterized as advance fees within the meaning of Business and Professions Code section 10026, subdivision (a)." Lewis's argument is essentially that these findings were not based on the allegations in the accusation because

11

the accusation did not mention loan modifications or section 10026.[5]  He contends this "gap" between the allegations in the accusation and the ALJ's findings violated the law because " 'findings in the Decision <u>must</u> be based upon the allegations in the Accusation.' "

In support of his argument, Lewis cites *Wheeler v. State Bd. of Forestry* (1983) 144 Cal.App.3d 522.  In *Wheeler*, a professional forester was charged with deceit, misrepresentation, or fraud for an error in the estimation of timber available for harvest. (*Id.* at pp. 525, 526.)  The administrative agency exonerated him of that charge but found him guilty of gross incompetence for the same error, even though the accusation did not charge him on that basis.  (*Ibid.*)  This court concluded the "charging error [wa]s fatal to th[e agency's] finding" because "[d]isciplinary action cannot be founded upon a charge not made."  (*Id.* at pp. 526, 527.)

*Wheeler* is of no assistance to Lewis.  As relevant here, the accusation in this case alleged that Lewis "collected advance fees from at least the following borrowers before [he] had . . . received a 'no objection letter' from the [Bureau] in violation of Section 10085 of the Code and Section 2970 of the Commissioner's Regulations."  The accusation then referenced the fees Lewis collected in August, November, and December 2008 and identified the specific clients involved in those incidents.  Corresponding to these allegations, the ALJ found that Lewis "violated . . . section[] . . . 10085 . . . and California Code of Regulations, title 10, section 2970 when he entered into a 'Hardship Services Enrollment' contract with clients . . . and collected an advance fee prior to the submission of a form advance fee agreement to the Bureau for review."  In making this finding, the ALJ referred back to an earlier finding regarding the fees Lewis collected in August, November, and December 2008.  Thus, unlike in *Wheeler*, the disciplinary action

---

[5]     Originally, Lewis also argued that the accusation did not mention Cloud 10 Financial, Inc., but in his reply brief he acknowledges that it did.

12

here *was* founded on a charge made in the accusation, and Lewis's complaint to the contrary is without merit.

V

*Penalty*

Lewis contends "[t]he Real Estate Commissioner committed prejudicial abuse of discretion in the decision to revoke Lewis's real estate broker's license." His showing on this point is deficient.

" '[T]he penalty imposed by an administrative body will not be disturbed in mandamus proceedings unless an abuse of discretion is demonstrated. [Citations.] Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed.' " (*Schmitt v. City of Rialto* (1985) 164 Cal.App.3d 494, 500.) "Thus, as to the discipline imposed the standard of review on appeal remains the same as it was in the superior court: the administrative agency's exercise of discretion as to the discipline to be imposed will not be disturbed unless a manifest abuse of discretion is shown." (*Id.* at p. 501.) "It is only in the exceptional case, when it is shown that reasonable minds cannot differ on the propriety of the penalty, that an abuse of discretion is shown." (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 47.)

Here, Lewis contends revocation of his broker's license was an abuse of discretion because "the misapplication of [section] 10026 amounts to first-class unfairness" and because there were "*screaming [Government Code section] 11503* accusation failures in the . . . charging document." We are not persuaded.

With respect to section 10026, we have concluded already that the ALJ's citation of the wrong version of that statute was erroneous but harmless. This harmless error could not render the revocation of Lewis's broker's license an abuse of discretion.

13

As for Lewis's argument that the accusation violated Government Code section 11503, that is based on his assertion (previously discussed) that the accusation did not mention loan modifications or section 10026. Government Code section 11503, subdivision (a) requires that an accusation filed to initiate "[a] hearing to determine whether a right, authority, license, or privilege should be revoked, suspended, limited, or conditioned" "shall be a written statement of charges that shall set forth in ordinary and concise language the acts or omissions with which the respondent is charged, to the end that the respondent will be able to prepare his or her defense. It shall specify the statutes and rules that the respondent is alleged to have violated, but shall not consist merely of charges phrased in the language of those statutes and rules."

Although it is true the accusation did not mention section 10026 -- the statute that defines what constitutes an advance fee -- Lewis offers no legitimate reason why it *had* to do so under Government Code section 11503. That statute requires the accusation to "specify the statutes and rules that the respondent is alleged to have violated." Lewis contends section "10026 is the requisite statute a licensee must be 'alleged to have violated' for disciplinary action based upon advanced fee charges" (italics omitted), but he is mistaken. Because section 10026 is merely a definitional statute, the accusation could not have alleged that he violated it. The provisions the accusation alleged Lewis violated were "Section 10085 of the Code and Section 2970 of the Commissioner's Regulations." As we have previously noted, these provisions provide that a licensee who proposes to collect an advance fee must first obtain from the Bureau approval of the advance fee agreement the licensee proposes to use. Thus, these provisions set forth the legal requirement with which Lewis failed to comply, and the accusation appropriately

14

specified *these* provisions as the basis for the charges against him.[6]  Government Code section 11503 did not require the Bureau to mention section 10026 as well.

With respect to the accusation's failure to specifically mention loan modifications, Lewis fails to show how that failure rendered the accusation defective under Government Code section 11503; he just says that it did.  We disagree.  The accusation charged that he accepted advance fees on three separate occasions from specific clients without having first obtained approval from the Bureau of the advance fee agreement he used with respect to those clients.  That was sufficient to properly allege a violation of the two provisions on which the Bureau relied in the accusation.  The failure to use the term "loan modification" did not render the accusation defective under Government Code section 11503.

Under all of the foregoing circumstances, Lewis has not shown any violation of Government Code section 11503 and thus cannot rely on any such violation as a basis for arguing that the Bureau abused its discretion in revoking his broker's license.

VI

*Recovery Of Audit Costs*

The ALJ found the Bureau was entitled to recover $4,851 in audit costs from Lewis under subdivision (b) of section 10148.[7]  This finding was presumably based on the ALJ's determination that Lewis violated California Code of Regulations, title 10,

---

[6]     It is worth noting that the regulation identified in the accusation specifically references the definition of "advance fees" in section 10026.  (Cal. Code Regs., tit. 10, § 2970.)

[7]     "The commissioner shall charge a real estate broker for the cost of any audit, if the commissioner has found, in a final desist and refrain order issued under Section 10086 or in a final decision following a disciplinary hearing held in accordance with Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code that the broker has violated Section 10145 or a regulation or rule of the commissioner interpreting Section 10145."  (§ 10148, subd. (b).)

15

section 2832 by failing to deposit advance fees that he collected in a trust account on which he or his fictitious business name was the trustee.

On appeal, Lewis contends the reimbursement order was "excessive and improper" because it was based on the underlying finding that the money he collected qualified as advance fees, which in turn was based -- in Lewis's view -- on the ALJ's "misapplication of [section] 10026."

We have concluded already that Lewis has not shown any misapplication of section 10026. While the ALJ did erroneously cite an inapplicable version of the statute in finding that Lewis collected advance fees unlawfully, that error was harmless because there was no material difference between the version of section 10026 that actually applied to Lewis's actions in 2008 and the version of the statute cited by the ALJ, which took effect in 2011. Since there was no misapplication of section 10026, Lewis has shown no error in the finding that the money he collected qualified as advance fees, and thus that finding cannot render the reimbursement order excessive or improper.

VII

*Denial Of Final Request For A Continuance*

Lewis contends the ALJ committed prejudicial error by denying his final request for a continuance of the administrative hearing because that ruling deprived Lewis of his right to counsel. We disagree.

At the outset, we must make two observations. First, to the extent Lewis complains on appeal about the trial court's resolution of this issue, those arguments are misplaced because on this point we independently review whether the ALJ failed to afford Lewis a fair hearing. (*Kifle-Thompson v. State Bd. of Chiropractic Examiners*, *supra*, 208 Cal.App.4th at p. 524.) How the trial court resolved the issue is of no concern in that independent review. Second, although Lewis frames the issue in terms of the denial of his right to counsel, it is important to remember that the ALJ did *not* rule that Lewis could not be represented by counsel of his choice at the administrative hearing.

16

Rather, the ALJ denied Lewis's final request for a continuance of the hearing. It is true that one of the reasons Lewis offered for the continuance was so that he could gather the money necessary to retain a particular attorney to represent him, but that fact alone is not sufficient to transform the denial of the continuance into the denial of the right to counsel. Thus, the question we answer here is not whether the ALJ denied Lewis his right to counsel but whether the ALJ abused her discretion in denying Lewis's final request for a continuance. (See *Ring v. Smith* (1970) 5 Cal.App.3d 197, 201 ["there is no absolute right to a continuance in a proceeding such as this, hence, unless the refusal of the hearing officer to grant a continuance was an abuse of discretion, there was no denial of due process"].)

With that in mind, we find no abuse of discretion in the ALJ's ruling. "[T]here is no absolute right, even in a criminal trial, to be represented by a particular attorney, when this is made the basis of a motion for a continuance [citation]; and, of course, the administrative hearing here was not a criminal proceeding nor governed by criminal legal precedents. [Citation.] Too, even in a criminal prosecution the right to counsel may be waived and such waiver may be established if the defendant is unduly dilatory." (*Ring v. Smith*, *supra*, 5 Cal.App.3d at p. 202.) Here, Lewis sought a fourth continuance of the hearing date barely two weeks before the scheduled date, which was already a year and one-half after the original hearing date. As one of numerous reasons for the requested continuance, he claimed he was "in negotiations" with an attorney and needed at least 30 days to "come up with the funds required to retain his services." In his motion, he offered no reason why he had not made an effort to retain an attorney earlier. In an e-mail reply to the Bureau's opposition, however, Lewis asserted that "[i]t was not until July 2013 that [he] confirmed [he] could afford a specific attorney *if* given more time."

On appeal, Lewis changes tacks and offers a different explanation for his delay. He contends he "first determined he needed counsel immediately following [the review of discoverable documents that occurred on July 5, 2013] in light of what was disclosed,

17

exchanged, misrepresented and [perceived as] concealed at that very stage of discovery."
(Italics omitted.) Unfortunately, Lewis did not make this argument to the ALJ, and we
cannot conclude that the ALJ abused her discretion in denying a continuance based on an
explanation for the delay that Lewis never gave her. The issue here is whether the ALJ
abused her discretion in finding that Lewis did not show good cause for the continuance.
(See Gov. Code, § 11524, subd. (a) [ALJ may grant continuance for "good cause
shown"].) Quite obviously, Lewis cannot claim that he showed good cause based on
information he never brought to the ALJ's attention.

Lewis also argues that the ALJ "made a mistake by relying on [the Bureau's] false
representation concerning [his] Notice of Defense." (Bold text omitted.) Fleshed out,
that argument goes something like this: In its response to Lewis's request for a
continuance, the Bureau asserted that because Lewis filed a notice of defense requesting a
hearing on the accusation in March 2011, he "has anticipated the need for an attorney in
this administrative matter for almost 2.5 years." By finding that Lewis had failed to
establish good cause for a continuance "[f]or all of the reasons set forth in [the Bureau's]
opposition," the ALJ necessarily adopted the Bureau's position that Lewis "has known
for two and one-half years of the need to retain counsel if he wanted representation."
According to Lewis, however, this implies that he " 'slept on his rights' " when he did no
such thing. According to Lewis, when he stated in his notice of defense that he did not
intend to be represented by an attorney, he made it clear that he did *not* anticipate needing
an attorney at the outset of the proceeding, and therefore the Bureau's representation to
the contrary, which the ALJ adopted, constituted "improper influence" on the ALJ.

This argument is without merit, mostly because Lewis misconstrues the actual
meaning of what the Bureau argued to the ALJ and what the ALJ found. By asserting
that Lewis had "anticipated the need for an attorney in this administrative matter for
almost 2.5 years," the Bureau was not making a representation of fact, true or false,
about what Lewis's actual mental state was at the time he filed his notice of defense and

18

thereafter.  Instead, the Bureau was simply asserting that because Lewis had requested a hearing on the charges against him back in March 2011, Lewis had had from that time forward to exercise his right to retain an attorney to represent him.  The ALJ effectively agreed with this observation, which was true.  Thus, in denying the continuance request for the reasons stated in the Bureau's opposition, the ALJ did not rely on "a highly prejudicial misstatement of fact" made by the Bureau, as Lewis asserts.  (Italics omitted.)

Lewis also offers some argument that we cannot decipher based on his assertion that the Bureau failed to consolidate the accusation against him with the cease and desist order against Cloud 10 Financial Inc.  He claims that a "misrepresentation [by the Bureau's attorney] regarding case consolidation further made the administrative hearing unfair" (bold text omitted) and that "consolidation . . . was necessary for the accusation to comply with statutory law" (italics and underlining omitted).

While the lack of case consolidation was one of the grounds Lewis offered for his final continuance request, Lewis does not explain how this request amounted to good cause for a continuance, nor does he explain how the lack of consolidation made the hearing unfair, nor does his explain why consolidation was necessary to comply with statutory law (which he never specifically identifies).  Lewis also fails to address the ALJ's implicit finding that the time for requesting a hearing on the cease and desist order had long since run, let alone show any error in that finding.

Finally, Lewis argues that the ALJ demonstrated "constitutionally intolerable bias" (italics omitted) against him in ruling on his continuance request.  His argument on this point, however, is simply a repackaging of the arguments we have rejected already.  Having found no merit in those arguments, we also find none in them again under the label of "bias."

# VIII

## *Challenges To Trial Court's Actions*

As we have tried to make clear, except with respect to the findings of fact, our review here is of *the ALJ's actions*. Thus, we consider, independent of the trial court, whether the ALJ prejudicially abused his or her discretion in any way or denied Lewis a fair hearing. We are concerned with the trial court's decision only to the extent the trial court found, in the exercise of its independent judgment, that the ALJ's factual findings were supported by the weight of the evidence, and even then all we can do is determine whether the trial court's findings are supported by substantial evidence, which requires us to give proper deference to the trial court. Outside that, however, the trial court's actions are essentially immaterial to our review.

It is with these principles in mind that we consider, and reject, Lewis's remaining arguments, which can be summarized as follows: (1) the trial court made "various misstatements" in its statement of decision "as to what the 'Accusation alleges' "; (2) the trial court " 'found' certain documents were not in the record that actually were"; (3) the trial court "misunderstood the objective 'Stickmond' facts' "; and (4) the trial court "failed to review the entire record prior to the hearing." Even if Lewis were correct on these points -- and we are *not* concluding that he is -- it would make no difference to our decision. Except with respect to the trial court's determination that the ALJ's factual findings were supported by the weight of the evidence, we are concerned only with what the ALJ did, not what the trial court did. And on the former point, the only challenge open to Lewis was to argue that substantial evidence in the administrative record did not support the trial court's findings. Lewis failed to offer any such challenge. Accordingly, Lewis's arguments that the trial court erred in various ways is of no moment and provides no basis for relief.

## DISPOSITION

The judgment is affirmed.  The Bureau shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


<u>        /s/                              </u>
Robie, J.


We concur:


<u>    /s/                          </u>
Blease, Acting P. J.


<u>    /s/                          </u>
Murray, J.